[Crim. No. 631.   Third Appellate District.—November 13, 1922.]

## THE PEOPLE, Respondent, v. EMANUEL TEIXEIRA, Appellant.

[1] CRIMINAL LAW — PERJURY — FALSE AFFIDAVIT — INTENT — USE — PLEADING.—An information purporting to charge perjury by reason of the making by defendant of a false affidavit to be used on a motion for a new trial in a criminal prosecution of another is fatally defective where it fails to allege that the affidavit was delivered by defendant to another person with the intent that it be "uttered or published as true," or delivered to another at all, and there is no allegation that said affidavit was actually used on said motion for a new trial.

[2] ID. — PLEADING — OATH TAKEN BY DEFENDANT — ATTESTATION TO TRUTH.—The allegation in such information that said affidavit "was subscribed and sworn to" before a certain notary public named who "did then and there . . . administer an oath in due form of law" to defendant and that in said affidavit defendant "did willfully, knowingly, corruptly, falsely and feloniously swear and take oath" to certain facts, was sufficient to show that defendant attested the truth of what was stated in the affidavit before a person authorized to administer oaths.

[3] ID.—JURISDICTION—INSUFFICIENT ALLEGATION. — The allegation in such information that the action in which such false affidavit was to be "produced and used" was "a certain criminal action then and there pending in the superior court" of that county was not sufficient to show that such superior court had jurisdiction of the action, and if the affidavit was to be used in a proceeding of which the superior court had no jurisdiction it could not constitute the basis of a charge of perjury.

[4] ID.—FALSE STATEMENTS—MATERIAL MATTER.—One of the primary essentials of a charge of perjury, under section 118a of the Penal Code, is that the false statement must relate to a "material matter," and that must appear in the information by specific averment or by the averment of such facts as necessarily to lead to the conclusion of law that the perjurious matter is material. It is not sufficient to allege that it was "competent" evidence to be received by the court.

APPEAL from a judgment of the Superior Court of Stanislaus County. J. S. Needham, Judge. Reversed.

The facts are stated in the opinion of the court.

L. J. Maddux and T. B. Scott for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

BURNETT, J.—Defendant was convicted of perjury and he appeals from the judgment, the order denying his motion for a new trial and his motion in arrest of judgment. The charging part of the information, under which the conviction was had, is as follows:

3. Sufficiency of indictment as to assignment of perjury, note, 17 Ann. Cas. 921.

"The said Emanuel Teixeira, on or about the first day of March, 1921, at and in said county of Stanislaus, State of California, and prior to the filing of this Information did wilfully make and execute a certain false instrument in writing, to-wit: an affidavit with the wilful intention to produce the said affidavit and allow the same to be produced and used on behalf of one Antone Vitro upon the hearing of a motion then and there pending for a new trial made on behalf of one Antone Vitro in a certain criminal action then and there pending in the Superior Court of the County of Stanislaus, State of California, Department No. One, wherein the People of the State of California was plaintiff and Antone Vitro was defendant, and for the fraudulent deceitful purpose of imposing the said instrument in writing upon said Superior Court as containing evidence competent to be received by said court upon hearing of a motion for a new trial, and to fraudulently affect and influence said court in deciding said motion for a new trial.

"That said affidavit in writing, so as aforesaid feloniously made and executed by him, the said Emanuel Teixeira, was and is in words and figures as follows, to-wit:

" 'In the Superior Court of the State of California, in and for the County of Stanislaus.

" 'The People of the State of California, Plaintiff,

v.

" 'Antone Vitro, Defendant.

" 'Affidavit.

" 'State of California,

County of Stanislaus,—ss.

" 'Emanuel Teixeira being first duly sworn deposes and says: I live near Modesto, in the county of Stanislaus, state of California. I have lived in the county for six years. I am a single man and am now 25 years of age. I have known Sarafina Enos for five years. I was working for John Vitro on the Leek ranch from April, 1916, to April, 1917. That during the time I worked for John Vitro I milked cows and did outside work on the ranch; that Sarafina Enos during the whole of that time was also working for John Vitro as cook. In the month of September, 1916, John Vitro had company and Sarafina Enos slept on a sofa in the sitting room; it was a sofa that is let down like

a bed. About 11 o'clock at night I went into the sitting room and went to bed with Sarafina Enos and we had sexual intercourse twice. She made no objections. After that she fell in love with Mike Silva and went with Mike Silva so that I had nothing further to do with her. After that Mike Silva came there every week. I saw him stay there as late as 11 o'clock at night many times. I also worked for John Vitro on the Ceres ranch for about five months and Sarafina Enos was also working at the Ceres ranch at the same time I was. I used to see Mike Silva come there many times and visit with her at the Ceres ranch.

"'EMANUEL TEIXEIRA: (his mark)

"'Witness to mark and signature of Emanuel Teixeira:

"'VERNON M. GANT.

"'T. B. SCOTT.

"'Subscribed and sworn to before me this 1" day of March, 1921.

"'L. J. MADDUX,

"'Notary Public, in and for the county of Stanislaus, state of California.

"'Filed March 2, 1921.'

"That said affidavit was subscribed and sworn to before L. J. Maddux, Esq., Notary Public in and for the county of Stanislaus, state of California, a duly appointed qualified and acting Notary Public in and for the County of Stanislaus, State of California, an officer authorized by law to administer oaths and to administer an oath to the said defendant, Emanuel Teixeira, and did then and there on the 1st day of March, 1921, in said county of Stanislaus, state of California, administer an oath in due form of law to said Emanuel Teixeira as the person who made and executed said affidavit above set forth.

"That in said affidavit the said Emanuel Teixeira did wilfully, knowingly, corruptly, falsely and feloniously swear and take oath that during the month of September, 1916, at the Leek ranch near the town of Hughson, County of Stanislaus, State of California, that he had sexual intercourse with one Sarafina Enos twice during said month of September, 1916.

"Whereas, in truth and in fact as he, the said Emanuel Teixeira, then and there well knew that he, Emanuel

Teixeira, never at said Leek ranch, in September, 1916, or at any time, or at any place, or at all, had sexual intercourse with the said Sarafina Enos, whereby the said Emanual Teixeira did then and there as aforesaid, feloniously, wilfully, knowingly and corruptly swear falsely and feloniously commit wilful perjury."

It is conceded that the authority for the prosecution is found in section 118a of the Penal Code providing as follows:

"Any person who, in any affidavit taken before any person authorized to administer oaths, swears, affirms, declares, deposes or certifies that he will testify, declare, depose or certify before any competent tribunal, officer or person, in any case then pending or thereafter to be instituted in any particular manner, or to any particular fact, and in such affidavit wilfully and contrary to such oath states as true any material matter which he knows to be false is guilty of perjury."

With the preceding, manifestly, must be considered section 124 as follows: "The making of a deposition, affidavit or certificate is deemed to be complete, within the provisions of this chapter, from the time when it is delivered by the accused to any other person, with the intent that it be uttered or published as true."

Appellant claims that the information is fatally defective in four particulars as follows: "1. There is no allegation that the false affidavit was ever produced or used in court or that the defendant authorized its use or delivered it to anyone to be used. 2. There is no allegation in the Information that the defendant first took oath to testify or depose truly. 3. It does not appear by said Information that the Superior Court had any jurisdiction of the case of *People* v. *Vitro.* 4. There is no allegation in the Information that the alleged false affidavit was material to any issue in the case of the *People* v. *Vitro.*"

[1] In support of the first contention appellant cites *People* v. *Robles,* 117 Cal. 681 [49 Pac. 1042]. Therein it was held, as stated in the syllabus, that "before a party can be convicted of perjury in making a false affidavit, he must either use the affidavit for a purpose contemplated by section 118 of the Penal Code, or deliver it to some one for such use; and an indictment which merely shows that a false

affidavit made by the defendant was used by another person on a motion for a new trial, without averring that the defendant so used it, or delivered it for such use, or that it was delivered by defendant to another person with the intent that it be uttered or published as true, does not state facts sufficient to constitute the offense of perjury." It is to be observed that the information herein is more defective in that respect than was the indictment therein for the reason that besides the failure to allege that the affidavit was delivered by the defendant to another person with the intent that it be "uttered or published as true," or delivered to another at all, there is no allegation that said affidavit was actually used on said motion for a new trial.

In the opinion in the Robles case, *supra,* it is declared: "Here the indictment only charges the making of the false affidavit; it does not charge enough. It should have declared that the affidavit was delivered with the intent that it be uttered and published as true. Such a statement in the pleading is just as necessary as to charge that the affidavit was made by the accused or that it was false; if it were possible, more necessary, for while the affidavit remains in the hands of the accused no mischief is done."

In reply to this point the attorney-general cites *People* v. *John,* 137 Cal. 220 [69 Pac. 1063], but that case does not overrule the Robles case; in fact, the court said: "*People* v. *Robles,* 117 Cal. 681 [49 Pac. 1042], has no application." In the John case the affidavit constitutes the complaint, which was the basis of the criminal prosecution, and it appeared that it was in the custody of the committing magistrate, whose duty it was at once to issue the warrant of arrest. The offense of perjury was therefore complete when the defendant subscribed and verified the affidavit. Neither is the case of *People* v. *Griesheimer,* 176 Cal. 44 [167 Pac. 521], inconsistent with the contention of appellant herein. In that case it was held that the essential facts constituting the offense sufficiently appeared although there was no direct averment of the causal connection between the false pretenses and the payment of the money or that the money was received as a subscription to a certain corporation.

[2]  In support of his second contention appellant cites *People* v. *Simpton,* 133 Cal. 367 [65 Pac. 834].  Therein

an affidavit was involved and the allegation of the indictment was that "the said G. W. Simpton, did then and there willfully, corruptly, knowingly, falsely and feloniously swear, take oath and make his affidavit," etc. The supreme court called attention to the fact that section 118 of the Penal Code requires that the person must be sworn to "testify or depose truly" and it is declared: "The words, 'swear, take oath, and make his affidavit' are not equivalent to an averment that he was 'duly sworn to testify truly.' " It was held that the indictment was fatally defective in that respect. It is to be said, though, that section 118a of the Penal Code was enacted after the opinion was rendered in the Simpton case, and the code commissioner states that "it is made necessary by the decision of the supreme court in *People* v. *Simpton,* 133 Cal. 367 [65 Pac. 834]." There is a distinction in the language of the two sections in that the latter does not contain the word "truly" and only requires that the affidavit be taken before an officer authorized to administer oaths and that the affiant "swear" to the facts therein stated. Section 119, following, prescribes that "the term 'oath,' as used in the last two sections, includes an affirmation and every other mode authorized by law of attesting the truth of that which is stated." We think it sufficiently appears that said affiant attested the truth of what was stated in the affidavit before a person authorized to administer oaths and that this objection to the information relates to "form rather than to substance."

[3] The third point is more serious. There is nothing in the information to show that the superior court had jurisdiction to hear the motion for a new trial at which said affidavit was to be "produced and used." There is no direct allegation that the superior court had jurisdiction nor are facts stated from which the inference would follow. The only averment as to the character of the charge against Antone Vitro is that it was "a certain criminal action then and there pending in the superior court of the County of Stanislaus." Manifestly, the foregoing is not sufficient since there are many "criminal actions" of which the justice court has exclusive jurisdiction. If the affidavit was to be used in a proceeding of which the superior court had no jurisdiction, it could not constitute the basis for a charge of perjury. In other words, the legal authority of

the court to hear and determine the motion for a new trial is one of the essential facts which must be affirmatively disclosed by the information or else it is fatally defective. (*People* v. *Howard*, 111 Cal. 655 [44 Pac. 342].)

[4] The last point is equally serious. Said section 118a requires that the false statement must relate to a "material matter." This is one of the primary essentials of a charge of perjury and it must appear in the information by specific averment or of such facts as necessarily to lead to the conclusion of law that the perjurious matter is material. (*People* v. *Ah Bean,* 77 Cal. 12 [18 Pac. 815].) In the Ah Bean case it is said: "There are two modes by which the materiality of the alleged false statement may be shown in criminal pleading: 1. By setting forth the nature of the issue, and the evidence given thereon so that as a matter of law it may be said the testimony upon which the perjury is assigned is material to the issue; 2. By showing an action at issue in a court of competent jurisdiction, the testimony given, its wilful and felonious falsity coupled with the averment that it was *material to the issue.*" As to said second method it must be said there was no attempt to allege that any of the statements in said affidavit was *material* to the determination of said motion for a new trial. It is true that the information contains a recital that it was "competent evidence to be received by said court" but "competent" and "material" represent two distinct and well recognized features and the allegation of the former does not supply the lack of the latter. Nor is a single fact alleged from which we must infer that on the motion for a new trial it was important to inquire whether any fact stated in said affidavit was true. The nature of the charge against Vitro is not alleged, except that it was a criminal action. This is not sufficient, of course, to show whether it was material to inquire as to the truth of the statements in said affidavit. Nor is there any intimation as to any of the grounds for the motion for a new trial. It is conceivable that this might have been alleged in the information so as to indicate the materiality of the alleged false matter, but nothing of the kind appears. Nor is there anything to show that said statement was material to any collateral matter, such as the veracity of any witness at the trial or of any witness or affiant at the hearing of the motion for a new trial. In

fine, there is an entire failure to allege any fact from which the inference would follow that such affidavit could have any legal potency in the determination of the motion.

We think these defects are too grave to be deemed cured by article VI, section 4½ of the constitution. They relate to important and fundamental requirements of pleading and it is of moment that at least a reasonable degree of uniformity should be maintained in a matter of practice of such significance to the orderly administration of justice.

The judgment and orders are reversed.

Anderson, J., *pro tem.*, and Finch, P. J., concurred.