[Civ. No. 19591.   Second Dist., Div. One.   Aug. 17, 1953.]

Estate of JOHN McNAMARA, Deceased.   CARROLL E. RITCHIE, Appellant.

Thomas A. Reynolds for Appellant.

Shelby Lee Chambers, as Amicus Curiae, for all other heirs-at-law.

DRAPEAU, J.—John McNamara died July 5, 1952. He owned several apartment houses and other property. His heirs were seven nieces and nephews.

He attempted to make a will, and to leave all of his property to one of his nephews, Carroll E. Ritchie. In his own handwriting he wrote the following on a sheet of paper:

"June 26   1952

"I in my right mind and in full possession of my senses do hereby bequeth to my nephew Carroll E. Ritchie my full interest in the Royal Alice Apts   214 East Adams Blvd   my full interest in the Villard Apts   228 West 28th St   my full

interest in the Donna Apts 2731 West 15th St. my full interest in the Abby Apts 1649 West 48th St. my full interest in lots 26-27 Block K Norwalk and what money I have in the Security First National Bank and it is my wish he be the administrator of my estate.''

If Mr. McNamara had gone on and subscribed his name to what he had written, the writing would, of course, have been a valid holographic will. For it would then have complied with section 53 of the Probate Code,—''entirely written, dated and signed by the hand of the testator himself.''

Instead of doing this, Mr. McNamara asked Mr. Ritchie to copy what he had written. He said he couldn't spell so well.

So Mr. Ritchie copied Mr. McNamara's writing onto another piece of paper. On this other paper, under Mr. Ritchie's writing, Mr. McNamara wrote: ''I have read the above statement,'' and signed his name. Beneath his signature he wrote the date, ''June 26, 1952.''

Then Mr. McNamara handed the document to Mr. Ritchie, and said, ''This will protect you.''

Mr. Ritchie presented the writing for probate.

In the probate court Mr. Ritchie testified that, upon decedent's representation and promise to leave the property to him by will, he had sold his own business and was taking care of decedent's apartment houses when the writing was made. He also testified that after he had copied decedent's handwriting and decedent had written his name and the date on the paper, decedent said he approved it.

The probate court found: ''that the instrument as a whole does not meet the requirements of an holographic will in this: That the same is not entirely written, dated and signed by the hand of the testator and that the portion of said document not written by decedent is not incorporated by reference.''

From the order denying probate Mr. Ritchie appeals. In his brief he contends, ''that considering the language of the will and the circumstances under which it was executed and the declarations of the decedent made in connection therewith, the lower Court should have determined that the first paragraph, not in the handwriting of decedent, was incorporated by reference by virtue of the portion subjoined thereto in decedent's handwriting, and that such document was executed *animus testandi* and should have been admitted to probate as the last will of John McNamara, deceased.''

The principles of integration and incorporation by

reference in the law of wills are set forth in *Estate of Wunderle,* 30 Cal.2d 274, at page 281 [181 P.2d 874]:

"In the law of wills, integration, as distinguished from incorporation by reference, occurs when there is no reference to a distinctly extraneous document, but it is clear that two or more separate writings are intended by the testator to be his will. . . . Thus several writings, connected by sequence of thought, . . . folded together, . . . or physically forming one document . . . have been admitted to probate as constituting an holographic will.

"On the other hand, there is incorporation by reference when one of the writings is a complete testamentary instrument, and refers to another document in a manner clearly designed to accomplish that purpose. The requisites of a valid incorporation by reference are that the incorporated document must be clearly identified and in existence at the time the will makes reference to it.

". . . the omission of a testamentary intent or of a date from an otherwise valid holographic will is not supplied by a separate document or letter, where there is nothing to indicate that the second document is to be read or construed as part of the holographic will.

"And the date of an holographic will may not be supplied by one not in the handwriting of the testator." (Authorities in the foregoing quotation have been omitted.)

Our courts in California have gone a long, long way to carry into effect wishes of testators, despite informalities in holographic wills. Reference to our case law will disclose a considerable number of such instances. Undoubtedly the reason for this benevolent approach to the probate of holographic wills has been the human desire of men for a time clothed with judicial power to comply with the wishes of those who have gone to Hamlet's "undiscover'd country from whose bourn No traveller returns . . ."

But there is another principle in the law of wills which must be kept in mind too. Such documents must meet the requirements of the statute which permits disposition of property by will.

In *Estate of Towle,* 14 Cal.2d 261 [93 P.2d 555, 124 A.L.R. 624], the writing presented for probate was partially in the handwriting of testatrix and partially in the handwriting of another person. In such circumstances our Supreme Court observed: "a document holographic in form to be effective as a valid testamentary disposition of a testator's property

must strictly fulfill the mandatory requirements of section 53 of the Probate Code.'' (P. 267.)

And in the Towle case, the basic reasoning which requires denial of probate of incomplete holographic wills is stated:

''The refusal of the courts in the past to permit any deviation from the clear, plain requirements of the code section governing the due execution of holographic wills was based upon the theory that the rigid requirement that such wills be entirely in the handwriting of the testator was enacted by the legislature to afford protection from the danger of forgery of such a will, not protected, as in a formal will, by the safeguard of the requirement of due attestation by competent witnesses. . . . In other words, the fact that a document is entirely in the handwriting of a testator, offers an adequate guaranty of its genuineness.'' (P. 271.)

So in this case the conclusion is inescapable that, notwithstanding the obvious wishes of the decedent, to hold the presented writing to be a will, or to declare it validated by including the copied writing of decedent, would unduly extend the framework prescribed by the Legislature within which holographic wills may be admitted to probate. and open the door to fraud and forgery.

The order is affirmed.

White, P. J., and Doran, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 15, 1953.