[Civ. No. 27871. First Dist., Div. Four. May 5, 1970.]

JERRY L. CLIFTON, Petitioner, v.
THE SUPERIOR COURT OF HUMBOLDT COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

[Civ. No. 27893. First Dist., Div. Four. May 5, 1970.]

CLARENCE OLIEN JOHNSON, JR., Petitioner, v.
THE SUPERIOR COURT OF HUMBOLDT COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

[Crim. No. 8742. First Dist., Div. Four. May 5, 1970.]

In re JERRY L. CLIFTON on Habeas Corpus.

(Three Cases.)

## Counsel

Mathews, Traverse & McKittrick, Robert W. Hill, James R. McKittrick, Robert C. Dunn and John R. Morrison for Petitioners.

Thomas C. Lynch, Attorney General, Derald E. Granberg, John T. Murphy and James B. Cuneo, Deputy Attorneys General, for Respondent and for Real Party in Interest in Civ. Nos. 27871 and 27893 and for Respondent in Crim. No. 8742.

## Opinion

**CHRISTIAN, J.**—Petitioner Jerry Lee Clifton is charged with murder (Pen. Code, § 187) and robbery (Pen. Code, § 211). Petitioner Clarence Olien Johnson, Jr., is charged in a separate information with murder (Pen Code, § 187) and two counts of robbery (Pen. Code, § 211). After denial of their motions in the trial court, they seek mandate to compel change of venue from Humboldt County and suppression of evidence. Clifton also seeks an order permitting his attorney's investigator to meet with him in the Humboldt County jail.

Petitioners contend that they cannot obtain a fair trial in Humboldt County because of prejudicial publicity. *Maine* v. *Superior Court* (1968) 68 Cal.2d 375, 383 [66 Cal.Rptr. 724, 438 P.2d 372], established the standard that " 'A motion for change of venue or continuance shall be granted whenever it is determined that because of the dissemination of potentially prejudicial material, there is a *reasonable likelihood* that in the absence of such relief, a fair trial cannot be had. . . . A showing of actual prejudice shall not be required.' " (Italics added.) In making that appraisal, an appellate court must make an independent evaluation of the facts. (*Fain* v. *Superior Court* (1970) 2 Cal.3d 46, 51 [84 Cal.Rptr. 135, 465 P.2d 23]; *Maine* v. *Superior Court, supra,* at p. 382.)

 Petitioners base their contention primarily on newspaper articles appearing in the Humboldt Times-Standard, the only daily newspaper published in the county. The newspaper claims a readership of more than 90,000 persons in Humboldt and Del Norte Counties. Petitioners have also submitted copies of articles from the Arcata Union, a weekly newspaper, and transcripts of television and radio broadcasts. The authenticity of these materials is not challenged.

On December 5, 1969 the Times-Standard carried an 8-column front page headline, "McKinleyville Man Brutally Slashed—3 Held in Arcata Death." The lead paragraph read: "Three men, all of whom Sheriff Gene Cox said today are members of the 'Death Riders' motorcycle gang of McKinleyville, are being held in the Humboldt County jail in connection with the savage early morning murder of Wescent Kolshinski, 54, North Arcata service station operator." The article continued:

"In custody and announced by Cox as being responsible for the murder are Jerry Lee Clifton, 22, Clarence O. Johnson, 20, and Ronald L. Johnson, age not listed . . .

"Kolshinski was found in the lubrication room . . . the top of his head mangled with a heavy instrument, numerous knife slashes across his face, and a crucifix-type cross cut in his throat.

"Unofficial reports said a pickup truck on a lube rack also was lowered onto the victim's head, which Arcata mortician Tom Field said today looked 'like it had been run over with a truck.'

"The three arrests, which Cox said stemmed from 'information,' came within an estimated five to six hours after what Cox called 'the most brutal murder I have ever seen.' "

Subsequent articles also mentioned the brutality of the killing and the

defendants' membership in a motorcycle gang. For example, the lead paragraph of a front page Times-Standard article on December 6, 1969 stated: "Questioning of possible witnesses to what one mortician referred to as the 'second most brutal slaying of a 27 year career in the business' continued last night in the Humboldt County Sheriff's Office, as Sheriff Gene Cox, deputies and detectives prepared a murder case against three youthful members of a motorcycle gang."

The preliminary hearing was closed to the public and news media at the request of the defendants, a fact prominently mentioned in newspaper articles. The hearings on petitioners' motions to suppress evidence were public, and the January 13, 1970 edition of the Times-Standard reported testimony of prosecution witnesses that Johnson had confessed and implicated Clifton. The article stated:

"Monday's daylong proceedings in court brought out that the Johnson brothers insist that Clifton was the one who plotted the robbery and attack, and induced them to participate . . .

". . . . . . . . . . . . .

"Hickok [chief investigator of the district attorney's office] quoted Clarence Johnson, Jr. as implicating Clifton with these words: 'He is the one who planned this thing—he is the one who made us do it.' "

On January 14, 1970 a Times-Standard article reported that "All [defendants] admit having been at the scene of the crime. Clarence Johnson is quoted as having accused Clifton of being the leader who made the Johnsons 'do it,' while Clifton denies any part in the attack that led to Kolshinski's death."

There is no indication in the record that petitioners' membership in the motorcycle group was relevant to the killing; witnesses testified at the preliminary hearing that the suspects left the scene in an automobile. The frequent description of the petitioners as members of the "Death Riders" must be considered potentially prejudicial. (Cf. *People* v. *McKee* (1968) 265 Cal.App.2d 53, 59 [71 Cal.Rptr. 26].)

Publicity about a defendant's confession is also a significant factor in determining a change of venue motion. (*Fain* v. *Superior Court, supra,* 2 Cal.3d 46, 52; *Maine* v. *Superior Court, supra,* 68 Cal.2d 375, 386.) In *Maine,* the Supreme Court stated, "This disclosure received substantial attention in the local newspaper, and it is undoubted that the existence of a confession is now common knowledge in the community. The admissibility of the confession into evidence has not been tested in a judicial hearing,

however, and its premature release must be regarded as potentially prejudicial to petitioners. When such a disclosure occurs in a small community, *the only effective remedy, if the defense so requests, is to change the venue.*" (68 Cal.2d at p. 386; italics added.)

Petitioner Johnson has challenged the confession, claiming it was elicited in violation of *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. Regardless of whether the confession is ultimately admitted as to Johnson, it cannot be admitted against Clifton. (*Bruton* v. *United States* (1968) 391 U.S. 123 [20 L.Ed.2d 476, 88 S.Ct. 1620]; *People* v. *Aranda* (1965) 63 Cal.2d 518 [47 Cal.Rptr. 353, 407 P.2d 265].) Yet the pretrial disclosure of the confession through newspaper articles may already have accomplished what *Aranda* sought to prevent.

The Attorney General argues that petitioners have failed to present proof that potential jurors have actually been exposed to the publicity or that they would be unable to evaluate the evidence in an impartial manner. It is argued that petitioners should be required to submit evidence such as qualified opinion surveys or opinion testimony as suggested in *Maine*. *Maine* states that a determination may be based on opinion surveys or testimony " '*or* on the court's own evaluation of the nature, frequency, and timing of the material involved.' " (68 Cal.2d at p. 383; italics added.) It must be remembered that the test is not actual prejudice, but a reasonable likelihood that a fair trial cannot be had. Because of the frequent front page coverage in the only daily newspaper in the county, it is highly probable that the case is well known in the community. The extent of community interest is indicated by a statement in the December 14, 1969 Times-Standard: "Yesterday's hearing (brief as it was) was attended by a large array of officials and legal functionaries as well as the public occupying every seat and packing the aisle almost to the barrier guarding the essential court area. Sheriff's officers and marshals of the court were seen in strategic positions in the room and corridor." It does not require an opinion poll to ascertain that a community would be outraged when three members of a motorcycle gang are accused of brutally murdering a local resident.

The Attorney General also argues that by the time of the trial, the public will have forgotten the publicity. A similar argument was rejected in *Maine* v. *Superior Court, supra,* 68 Cal.2d 375. The court noted: "While a lengthy continuance might sufficiently protect the accused in some cases, it does not do so here. Delays may be an efficacious antidote to publicity in medium-size and large cities, but in small communities, where a major crime becomes embedded in the public consciousness, their effectiveness

is greatly diminished." (68 Cal.2d at p. 387.)[1] Finally, the Attorney General suggests that petitioners be required to make a good faith attempt to impanel an impartial jury; they could then renew their motion for change of venue if the attempt is unsuccessful. This procedure was also rejected in *Maine*. (68 Cal.2d at pp. 380-381.)

Petitioners are charged with murder. ▮ The gravity of the charge is a consideration in determining the risk of prejudice. (*Fain* v. *Superior Court, supra,* 2 Cal.3d 46, 54.) The Supreme Court has also held that when the issue is raised before trial, doubts should be resolved in favor of changing the venue. (*Fain* v. *Superior Court, supra,* at p. 54; *Maine* v. *Superior Court, supra,* 68 Cal.2d 375, 387-388.) ▮ We conclude that there is a reasonable likelihood that a fair trial cannot be had in Humboldt County; a change of venue is necessary.

Petitioners also seek suppression of evidence under Penal Code section 1538.5. ▮ Johnson's petition must be denied because it was not filed within 30 days after denial by the trial court of his motion to suppress the evidence in question. (Pen. Code, § 1538.5, subd. (i).) Timely filing is jurisdictional.(*Gomes* v. *Superior Court* (1969) 272 Cal.App.2d 702, 704 [77 Cal.Rptr. 539].) Petitioner Clifton, in a timely petition, asserts that his arrest was illegal and that all evidence obtained as a result thereof should be suppressed; he also challenges a warrant authorizing search of his home and automobile.

On the morning of the killing, informant Ross Sturm voluntarily appeared at the sheriff's office. He told Sergeant Simmons and Investigator Hickok that he, Clarence Johnson and Clifton had planned a similar robbery in August. They were to go to the service station and have the attendant place oil in the automobile; then Sturm was to hit the attendant on the head. They did go to the station, but Sturm refused to hit the attendant. Sturm gave the officers their first lead about Clifton's possible involvement in the killing.

After interviewing Sturm, Officer Simmons learned that officers were already at the Johnson home because witnesses' descriptions of the robbers fit the Johnson brothers. Shortly afterwards, the Johnson brothers were brought into the sheriff's office. Clarence Johnson at first denied any in-

---

[1]The population of Humboldt County is approximately 100,000. (*Whittaker* v. *Superior Court* (1968) 68 Cal.2d 357, 373 [66 Cal.Rptr. 710, 438 P.2d 358].) The population of Mendocino County, where the crimes in *Maine* took place, is 52,400. In *Fain* v. *Superior Court, supra,* 2 Cal.3d 46, 52, the Supreme Court noted that the population of Stanislaus County, which is 184,000, was not significantly larger than that of Mendocino County for the purpose of determining whether a trial would be a significant event in the community.

volvement in the killing and robbery. During the interrogation, he crossed his legs and Simmons and Hickok noticed blood on his shoe. When asked about the blood, Johnson replied that it came "[f]rom that old man out at the service station." He then confessed, implicating Clifton.

Clifton was arrested at his home in McKinleyville. A search uncovered a knife in his belt. After being advised of his rights, Clifton admitted being present at the service station with the Johnsons; he denied participation in any killing or robbery.

A search warrant was obtained upon an affidavit made by an investigating officer. The warrant authorized a search of Clifton's home and automobile. The property to be seized consisted of items stolen at the station or used in the perpetration of the robberies and murder. The facts linking Clifton to the property came from the statements of Clifton and Johnson.[2]

Clifton contends that the arrest was unlawful because the only information establishing probable cause came from two untested informants, Sturm and Johnson.[3] The only previous contact the officers had with Sturm was that they had questioned him in connection with a charge of statutory rape. ■ Information of an informer whose reliability has not been previously tested does not constitute reasonable cause for arrest of another unless police have obtained independent corroborating evidence. (*People* v. *Lara* (1967) 67 Cal.2d 365, 374 [62 Cal.Rptr. 586, 432 P.2d 202], cert. den. 392 U.S. 945 [20 L.Ed.2d 1407, 88 S.Ct. 2303]; *Pollock* v. *Superior Court* (1969) 272 Cal.App.2d 548, 553 [77 Cal.Rptr. 565].)

■ While Sturm's information alone would not justify an arrest, the

---

[2]Johnson contends his statement was obtained in violation of *Miranda* v. *Arizona, supra,* 384 U.S. 436. Regardless of the merits of his contention, evidence seized as a result of Johnson's statement can be admitted against Clifton, as a defendant has no standing to assert a violation of another person's Fifth or Sixth Amendment rights. (*People* v. *Varnum* (1967) 66 Cal.2d 808, 811-813 [59 Cal.Rptr. 108, 427 P.2d 772], appeal dismissed 390 U.S. 529 [20 L.Ed.2d 86, 88 S.Ct. 1208].)

[3]It should be noted that the legality of an arrest is at issue in a 1538.5 motion only as it affects a subsequent search. The search of the home and automobile was under a search warrant and not incident to the arrest. Therefore, as to that search, the legality of Clifton's arrest is relevant only to the extent that Clifton's admission, which was a product of the arrest, is essential to the affidavit. The admissibility of the admission itself cannot be challenged under Penal Code section 1538.5, which relates solely to evidence obtained in a search. (*People* v. *Superior Court* (1969) 275 Cal.App.2d 49, 51 [79 Cal.Rptr. 704].) However, physical evidence seized as the result of an illegally obtained statement may be challenged under section 1538.5. (*People* v. *Superior Court* (1970) 3 Cal.App.3d 476, 483-484 [83 Cal.Rptr. 771].)

officers had the statements of both Sturm and Johnson. Petitioner contends that Johnson also was an unreliable informant, as the officers conducting the investigation had no prior dealing with him until the morning of the crime. Johnson's statements were sufficiently corroborated by independent information—the blood on his shoes and the witnesses' description of him—to give the officers reasonable ground to believe he was telling the truth. Moreover, Johnson's and Sturm's statements, independently obtained, corroborated each other. ■■■ "Such corroboration need not itself amount to reasonable cause to arrest; its only purpose is to provide the element of 'reliability' missing when the police have had no prior experience with the informant. Accordingly, it is enough if it gives the officers reasonable grounds to believe the informant is telling the truth, for in this type of case, the issue is 'not whether the information obtained by the officers emanated from a reliable source, but whether the officers could reasonably rely upon that information under the circumstances.' " (*People* v. *Lara, supra,* 67 Cal.2d 365, 374-375; see also *People* v. *Sandoval* (1966) 65 Cal.2d 303, 308-309 [54 Cal.Rptr. 123, 419 P.2d 187], reh. den. 386 U.S. 1000 [18 L.Ed.2d 355, 87 S.Ct. 1314].) ■■■ The arrest was not unlawful and thus did not taint the evidence subsequently seized.

Clifton challenges the search warrant on two grounds. First, he contends that the facts establishing probable cause were based solely on Clifton's illegally obtained admissions and on information from an unreliable informant. This contention is disposed of by the above discussion.

Clifton also contends that the affidavit was deficient because it was not signed under oath or penalty of perjury. Simmons testified that the magistrate asked him whether the statements in the affidavit were true, and he replied they were. He had not been sworn before he made this declaration. Simmons signed the affidavit in the presence of the magistrate. The magistrate certified that the affidavit was subscribed and sworn to before him.

The Fourth Amendment to the United States Constitution and article I, section 19, of the California Constitution, provide that a warrant can issue only for probable cause "supported by oath or affirmation." Penal Code section 1525 requires that a search warrant be supported by an affidavit. An affidavit is defined in Code of Civil Procedure section 2003 as a "written declaration under oath."

■■■ The purpose of requiring an oath is to prevent perjury. Simmons' declaration before a magistrate that the statements were true would constitute an oath if he were charged with perjury, even though he was not formally sworn. (*People* v. *Brown* (1954) 125 Cal.App.2d 83, 88 [269 P.2d 918]; *People* v. *Teixeira* (1922) 59 Cal.App. 598, 604 [211 P. 470];

Pen. Code, § 121.) Therefore the declaration was a sufficient oath for an affidavit supporting a search warrant.

Clifton also challenges the trial court's denial of his motion seeking permission for his court-appointed attorney's investigator to visit him in the county jail. ■ The right to counsel requires that the attorney be given a reasonable opportunity to ascertain the facts surrounding the charged crime so he can prepare for trial. (*Cornell* v. *Superior Court* (1959) 52 Cal.2d 99, 102-103 [338 P.2d 447].) "The basic right involved is not limited simply to meetings between the client and his counsel. If necessary, third persons may accompany counsel during his consultations with his client." (*Id.* at p. 103; see also Witkin, Cal. Criminal Procedure (1963) § 375, pp. 367-368.)

The Attorney General concedes that an investigator should generally be allowed reasonable visitation privileges in order to assist defense counsel in the preparation of a case. However, it is argued that the particular investigator employed by Clifton's attorney may properly be refused admittance to the jail because he is a convicted felon. The sheriff has a rule prohibiting jail visits by felons who are not members of the inmate's family.

The sheriff is responsible for maintaining secure custody of his prisoners. In meeting that responsibility he may reasonably regulate the operation of the county jail. The rule restricting jail visits by felons does not appear to be unreasonable. ■ But the authority of the sheriff is not so absolute as to prevail against the defendant's right to prepare his defense. The choice of an investigator lies with defense counsel. There has been no showing by the prosecution that the investigator's visits to the jail cannot be so handled as to avoid endangering security. In the absence of such a showing, the investigator must be accorded *reasonable* visitation privileges with Clifton for the purpose of preparing the defense's case. If the privilege is abused, the prosecution has the recourse of seeking a protective order from the trial court, by whose appointment counsel is acting.

■ Clifton's attorney has informally requested this court to relieve him from further responsibility in the case. This we decline to do; the appointment and relief of assigned counsel is a function of the trial court.

A writ will issue directing respondent court to grant the motions for change of venue, hold a hearing to determine a county where a fair and impartial trial can be had, and transfer the cause to that place. The petition for writ of habeas corpus is granted insofar as the court is directed to vacate its order denying petitioner Clifton's motion for visitation privileges for

his attorney's investigator and to enter an order granting reasonable visitation privileges. As to the other contentions that evidence should be suppressed, the alternative writs are discharged and the petitions are denied.

Devine, P. J., and Rattigan, J., concurred.