141 Cal.App.3d 798 (1983)
190 Cal. Rptr. 546
THE PEOPLE, Plaintiff and Appellant,
v.
THOMAS PATRICK EGAN et al., Defendants and Respondents.
Docket No. 11937.
Court of Appeals of California, Third District.
April 11, 1983.
*799 COUNSEL
George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Charles P. *800 Just and Eddie T. Keller, Deputy Attorneys General, for Plaintiff and Appellant.
Kenneth M. Foley, Reed & Samuel and James S. Reed for Defendants and Respondents.
OPINION
SPARKS, J.
In this case we consider whether the misplacement of a magistrate's jurat on an affidavit in support of a search warrant invalidates the warrant. We hold that it does not.
Defendants and respondents Thomas Patrick Egan and Shirley Faye Salvo were each charged by information with one count of the cultivation of marijuana in violation of Health and Safety Code section 11358, and one count of possession of marijuana for sale in violation of Health and Safety Code section 11359. The evidence against them was seized pursuant to a search warrant which was served during the nighttime under an indorsement for night service by the issuing magistrate. The superior court ordered the evidence suppressed after a special hearing pursuant to Penal Code section 1538.5 on the grounds that the indorsement for night service was not supported by a competent affidavit showing good cause for night service. The court subsequently dismissed the action pursuant to Penal Code section 1385 on its own motion. The People appeal pursuant to Penal Code section 1238, subdivision (a)(7). We hold that the indorsement for night service was supported by a competent affidavit showing good cause and we shall reverse the order of dismissal.

FACTS[1]
On September 22, 1980, Calaveras County sheriff's officers conducted an aerial surveillance for growing marijuana. Prompted by rumors of marijuana cultivation near the Adams Ranch, they overflew that area. During the flight they observed growing marijuana on defendants' property. Based upon this observation Sergeant Marz met with a representative of the district attorney's office and prepared an application for a search warrant.
At the time the application for a search warrant was prepared the officers intended to conduct other searches for the rest of the day and anticipated securing *801 and serving the warrant in this case on the next day, September 23. They spent the remainder of the working day conducting other searches and did not apply for the warrant involved in this case. At about 8 p.m. Sergeant Black received an anonymous telephone call in which the caller stated that the earlier searches had missed two marijuana patches and the growers were getting "hinky," and might remove the plants by moonlight. Sergeant Marz called the district attorney at his home and thereafter met with him to prepare a showing for night service.
The typewritten showing for night service was drawn on a piece of paper separate from the original affidavit. It reports the anonymous telephone call to Sergeant Black, relates that a search was conducted near defendants' property earlier in the day, and states that the affiant's experience is that marijuana growers communicate with each other and when there is a "bust" other growers commonly try to remove or destroy their crop.
Sergeant Marz presented the magistrate with all of the documents in support of the issuance of a warrant, including the statement requesting indorsement for night service. The magistrate read the papers, administered an oath to Marz, and asked him whether the information was true and correct to the best of his knowledge, information and belief. He considered the statement requesting indorsement for night service to be part of the affidavit for a search warrant. He then had Marz sign both the original affidavit and the separate request for night service.[2]
The original affidavit contained the standard jurat[3] form, reading "Subscribed and sworn to before me on ____." The magistrate then dated and signed the jurat. Since the request for an indorsement for night service was prepared subsequent to preparation of the application for a warrant, the facts supporting that request did not appear above the jurat, but were on the separate paper. The magistrate, satisfied that probable cause existed, issued a search warrant at 9:55 p.m. and indorsed it for night service.
At approximately 11 p.m. on the evening of September 22, 1980, officers executed the search warrant on defendants' property. They discovered and seized *802 a crop of cultivated marijuana consisting of 77 plants ranging in size from 10 to 15 feet high. They also discovered and seized eight potted marijuana plants of smaller size. Numerous other items of evidence tending to show defendants' control of the property and purposeful cultivation of marijuana were also seized.
After a special hearing the superior court granted a motion to suppress all of the evidence seized on the grounds of improper night service. The court reasoned that the showing for night service was not incorporated by reference in the affidavit, and that the jurat to the affidavit was executed only on the original affidavit.

DISCUSSION

I
Penal Code section 1533 provides: "Upon a showing of good cause, the magistrate may, in his discretion, insert a direction in a search warrant that it may be served at any time of the day or night. In the absence of such a direction, the warrant shall be served only between the hours of 7 o'clock a.m. and 10 o'clock p.m." Although section 1533 does not expressly require the showing of good cause to be made by affidavit, the Court of Appeal in People v. Watson (1977) 75 Cal. App.3d 592 [142 Cal. Rptr. 134], held that the provisions of Penal Code section 1526, which do require an affidavit in support of a search warrant, are incorporated into section 1533. This is the crux of this appeal. Defendants argue, and the trial court agreed, that the showing for night service was not made by affidavit because of the placement of the jurat. The People contend the showing was properly sworn to by Sergeant Marz and the placement of the jurat does not defeat the showing made.
Initially we address and reject the defendants' contention that this is a simple sufficiency of the evidence question. (1) It is true that on review of a trial court's decision on a motion to suppress evidence the facts found by the trial court must be accepted if supported by substantial evidence. (People v. Leyba (1981) 29 Cal.3d 591, 596-597 [174 Cal. Rptr. 867, 629 P.2d 961].) However, the question whether the search was valid based upon the facts found by the trial court is a question of law upon which the appellate court exercises its independent judgment. (Ibid.) In this case the trial court did not find that Marz had not sworn to the truth of the matters asserted in the request for night service. The evidence would not have supported such a finding since both Marz and the magistrate testified that he had so sworn. The court ordered suppression of the evidence on the ground of the placement of the jurat and because the showing for night service was not specifically incorporated by reference in the affidavit in support of the issuance of the warrant. This is a question of law which is properly subject to appellate review.
*803 (2) We agree with defendants that the request for night service was not incorporated by reference into the affidavit for the search warrant. Incorporation by reference occurs when one complete document expressly refers to and embodies another document. (See Estate of McNamara (1953) 119 Cal. App.2d 744, 747 [260 P.2d 182].) It is necessary that the incorporated document be clearly identified and in existence at the time of incorporation. (Ibid.) Here, the showing for night service was not prepared until after the affidavit for the search warrant and is not referred to in that document. It cannot therefore be considered incorporated by reference.
The doctrine of incorporation by reference is frequently encountered in decisions concerning the validity and effect of wills. Reference to the subject of wills provides the doctrine which is controlling here. That is the rule of integration. Simply stated, "... integration, as distinguished from incorporation by reference, occurs when there is no reference to a distinctly extraneous document, but it is clear that two or more separate writings are intended by the testator to be his will...." (Estate of Wunderle (1947) 30 Cal.2d 274, 281 [181 P.2d 874]. See also Estate of Dumas (1949) 34 Cal.2d 406, 411 [210 P.2d 697].) In this case Marz took the affidavit in support of the issuance of a search warrant and the factual statement for night service to the magistrate as one complete package. The magistrate considered the documents to be one affidavit, and swore Marz to the truth of all of the facts contained therein. Under such circumstances it is unnecessary that the showing for night service be incorporated by reference in the affidavit for a search warrant; the two documents were integrated for purposes of Marz' oath.
Since, in fact and in law, Marz must be regarded as having sworn to the truth of the showing for night service, the question is whether the placement of the jurat requires disregard of that showing. We must hold that it does not. While we have discovered no appellate opinion directly controlling, numerous decisions point to, and even dictate, this result. In People v. Brussel (1932) 122 Cal. App.Supp. 785 [7 P.2d 403], a trial court dismissed an action on the ground the complaint was not under oath. The defendant had contended that the use of a rubber stamp signature vitiated the oath. The appellate department of the superior court reversed, stating: "In the ordinary case the fact that the complaint is under oath is shown by the signature of the officer administering the oath. But where it is otherwise shown that the affiant in fact swore to the affidavit, the failure of the officer to affix his signature to the jurat will not vitiate the proceedings. [Citation.] Where the signature of the officer does not appear, the prosecution must otherwise show that the oath was administered." (122 Cal. App.Supp. at p. 788.)
In Clifton v. Superior Court (1970) 7 Cal. App.3d 245 [86 Cal. Rptr. 612], an officer presented an affidavit to a magistrate to request a search warrant. The *804 magistrate asked him whether the statements were true and he replied that they were. He had not, however, been sworn. The officer signed the affidavit in the presence of the magistrate and the magistrate executed a jurat. The defendant contended the search warrant was not supported by affidavit because an oath had not been administered. The Court of Appeal rejected the contention. "The purpose of requiring an oath," the Clifton court explained, "is to prevent perjury. [The officer's] declaration before a magistrate that the statements were true would constitute an oath if he were charged with perjury, even though he was not formally sworn. (People v. Brown (1954) 125 Cal. App.2d 83, 88 [269 P.2d 918]; People v. Teixeira (1922) 59 Cal. App. 598, 604 [211 P. 470]; Pen. Code, § 121.) Therefore the declaration was a sufficient oath for an affidavit supporting a search warrant." (Id., at pp. 254-255.)
In People v. Chavez (1972) 27 Cal. App.3d 883 [104 Cal. Rptr. 247], an officer took an affidavit for a search warrant to a magistrate's office. The clerk of the court administered an oath to the officer, had him sign the affidavit, and took the affidavit to the magistrate. The magistrate issued the warrant without coming "face to face" with the officer. The defendant sought suppression on the ground that Penal Code section 1526 requires the magistrate to take the affidavit. The Court of Appeal rejected the argument holding that literal compliance was not necessary: "The emphasis is upon substance, not form, in the issuance of a search warrant under Penal Code section 1526. It is apparent from the record that [the magistrate] fulfilled the substantive requirements of the statute...." (27 Cal. App.3d at p. 887.)
These decisions reflect two established policies of this state. The first is the liberal policy in ruling upon the question whether compliance with formalities in oath taking has been had. (See Pen. Code, § 121; People v. Walker (1967) 247 Cal. App.2d 554, 562 [55 Cal. Rptr. 726].)[4] The purpose of requiring an oath is to insure the good faith of the affiant and to hold the affiant responsible for any false statements. Substantial compliance is all that is required and the courts have often refused to declare an oath invalid based upon technical irregularities. (See for example Peters v. City & County of San Francisco (1953) 41 Cal.2d 419, 426 [260 P.2d 55], affiant did not personally appear before the notary; People v. George (1898) 121 Cal. 492, 493 [53 P. 1098], affidavit valid despite the misnaming of the affiant in the body thereof; People v. Aguirre (1972) 26 Cal. App.3d Supp. 7, 10 [103 Cal. Rptr. 153], affidavit valid although oath administered after facts stated; Sheeley v. City of Santa Clara (1963) 215 *805 Cal. App.2d 83, 85 [30 Cal. Rptr. 121], verification valid even though notary mistakenly executed acknowledgement form rather than verification.)
The second policy involved here is the policy against technical and formalistic constructions to test the validity of a search warrant supported by affidavit. "`Technical requirements of elaborate specificity ... have no proper place in this area.'" (People v. Sloss (1973) 34 Cal. App.3d 74, 82 [109 Cal. Rptr. 583], quoting United States v. Ventresca (1965) 380 U.S. 102, 108 [13 L.Ed.2d 684, 689, 85 S.Ct. 741].) In accordance with this policy the courts have refused to invalidate search warrants based upon minor, technical irregularities. (See Nunes v. Superior Court (1980) 100 Cal. App.3d 915, 921 [161 Cal. Rptr. 351], magistrate forgot to indorse for night service but had indicated an intent to do so; People v. Superior Court (Robinson) (1977) 75 Cal. App.3d 76, 80 [141 Cal. Rptr. 917], magistrate forgot to sign the warrant; Sternberg v. Superior Court (1974) 41 Cal. App.3d 281, 291 [115 Cal. Rptr. 893], failure to sign warrant cured by subsequent signature; People v. Moore (1973) 31 Cal. App.3d 919, 925 [107 Cal. Rptr. 590], warrant for narcotics when dangerous drugs intended; People v. Aguirre, supra, 26 Cal. App.3d Supp. at p. 10, oath administered after the facts were stated.)
These two policies, considered together, mandate that we disregard the placement of the jurat in the circumstances of this case. It must be remembered that Marz' responsibility for perjury in the event of falsehood arose through the taking of the oath and verification of the truth of the matters asserted. (Pen. Code, §§ 118, 118a.) The placement of the jurat did not relieve him of that responsibility and should not be permitted to invalidate the indorsement for night service which was based upon that responsibility. The execution of the jurat served an evidentiary purpose in establishing the taking of an oath, but it is not conclusive on the question. (People v. Brussel, supra, 122 Cal. App.Supp. at p. 788.) It was competent for the People to establish, as they did, that the showing for night service was made under oath. (Ibid.)

II
(3) Defendants further contend that even if the showing for night service were made upon oath the showing was not sufficient. We disagree. A magistrate's finding of reasonable necessity for nighttime service will not be disturbed on appeal absent an abuse of discretion. (People v. McCarter (1981) 117 Cal. App.3d 894, 906 [173 Cal. Rptr. 188]; People v. Mardian (1975) 47 Cal. App.3d 16, 35 [121 Cal. Rptr. 269].) The showing should be considered with the affidavit in a common sense manner to determine whether the facts reasonably support the inference that the interests of justice are best served by the authorization for nighttime service. (Ibid.)
*806 We find no abuse of discretion. The magistrate was informed that officers had conducted aerial surveillance over the area during the daytime hours. Aerial surveillance is a form of investigation which is likely to be observed by cultivators. The officers had spent the remainder of the day executing search warrants on nearby parcels and making "busts" for cultivation of marijuana, actions which were also likely to have been observed. Several marked police vehicles were used in the daytime searches. Under such circumstances it was reasonably likely that defendants would surmise that they too were under suspicion, and it is permissible to infer that contraband will be disposed of more quickly when the suspect knows he is a suspect. (People v. Zepeda (1980) 102 Cal. App.3d 1, 6 [162 Cal. Rptr. 143].) Under such circumstances the anonymous tip that defendants were getting "hinky" only served to verify what could reasonably be expected, and the tip that they would remove the crop at night merely provided additional reasonable cause for night service of the search warrant.

III
(4) Defendants finally contend that the evidence should have been suppressed because it was the product of an aerial surveillance. They assert that aerial surveillance for growing marijuana is not proper. Again we disagree. The appellate courts of this state have consistently upheld aerial surveillance from lawful altitudes over rural and relatively unpopulated property. (Tuttle v. Superior Court (1981) 120 Cal. App.3d 320, 327 [174 Cal. Rptr. 576]; People v. Joubert (1981) 118 Cal. App.3d 637, 642 [173 Cal. Rptr. 428]; People v. St. Amour (1981) 104 Cal. App.3d 886, 891 [163 Cal. Rptr. 187]; Burkholder v. Superior Court (1979) 96 Cal. App.3d 421, 425-426 [158 Cal. Rptr. 86]; People v. Superior Court (Stroud) (1974) 37 Cal. App.3d 836, 838-839 [112 Cal. Rptr. 764]; Dean v. Superior Court (1973) 35 Cal. App.3d 112, 118 [110 Cal. Rptr. 585]. Cf. People v. Sneed (1973) 32 Cal. App.3d 535, 542-543 [108 Cal. Rptr. 146], approving aerial surveillance but finding the search unreasonable under the peculiar circumstances of that case.) We shall do likewise.
The order of dismissal is reversed and the cause is remanded to the trial court with directions to vacate its order suppressing evidence and to enter a new order denying the motion to suppress.
Regan, Acting P.J., and Carr, J., concurred.
Petitions for a rehearing were denied May 5, 1983, and respondents' petitions for a hearing by the Supreme Court were denied June 23, 1983.
NOTES
[1] The factual situation upon which the trial court ruled was established at a special hearing pursuant to Penal Code section 1538.5, and was supplemented pursuant to stipulation by the transcript of the preliminary hearing. Our statement of the facts is taken from the transcripts of both hearings.
[2] Penal Code section 1526, subdivision (a), directs that "[t]he magistrate may, before issuing the warrant, examine on oath the person seeking the warrant and any witnesses he may produce, and must take his affidavit or their affidavits in writing, and cause same to be subscribed by the party or parties making same." (Italics added.) The word "subscribe" means to "`write (as one's name) underneath....'" (People v. Pierce (1967) 66 Cal.2d 53, 59, fn. 5 [56 Cal. Rptr. 817, 423 P.2d 969].) Sergeant Marz clearly "subscribed" both documents since he signed each one at its end.
[3] "With regard to an affidavit, the `jurat' is simply a certificate evidencing the fact that the affidavit was properly made before a duly authorized officer. Although no particular form is required, a proper and usual form of jurat is `sworn to and subscribed before me,' followed by the date and the taking officer's signature." (2 Cal.Jur.3d, Affidavits, § 17, p. 796; fns. omitted.)
[4] Both the Fourth Amendment to the United States Constitution and article I, section 13, of the California Constitution prohibit a warrant from issuing except on probable cause "supported by oath or affirmation." Penal Code section 1525 further directs that a "search-warrant cannot issue but upon probable cause, supported by affidavit...." An affidavit is defined as a "written declaration under oath." (Code Civ. Proc., § 2003.) Both of the documents here were written declarations sworn to by the affiant officer.