[No. B178341. Second Dist., Div. Six. Oct. 20, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL LEE HALE, Defendant and Appellant.

**COUNSEL**

Peter A. Vance and Bruce M. Margolin for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Victoria B. Wilson and Steven D. Matthews, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GILBERT, P. J.**—An officer signs an oath on the face of a search warrant. He swears that he has probable cause to believe the property described in the warrant can be lawfully seized and that his belief is based on the statement of probable cause contained in the warrant. Here we conclude the warrant is valid because the oath necessarily implies that the facts in the statement of probable cause are true. We therefore disagree with *People v. Leonard* (1996) 50 Cal.App.4th 878 [57 Cal.Rptr.2d 845], which holds otherwise.

Michael Lee Hale pled no contest to one count of possession of marijuana for sale. (Health & Saf. Code, § 11359.) On appeal he contends the trial court erred in denying his motion to suppress evidence. (Pen. Code, § 1538.5.)[1] We affirm.

### FACTS

Detective Andrew Bebon of the Pomona Police Department believed Hale had shown harmful matter to minors in violation of section 313.1. Bebon obtained a warrant to search Hale's home for pornography and related evidence. During the search, the police found a large quantity of marijuana. Hale was never charged with a violation of section 313.1

The warrant contained a "Statement of Probable Cause" in which Bebon stated:

"Statement of Probable Cause

"On 042104, I was assigned Pomona Police Case # 04-59036 (see attached report). On 042204, I contacted victim [T.] at his residence. He indicated to me that on two occasions he had been invited into the suspect Michael Hale's residence at 1111 Price Street Space A-11 in Pomona, County of Los Angeles, State of California. During the first time at this location, the suspect Hale asked the 10 year old victim what kind of porno he wanted to watch, boy on boy, girl on girl, boy on girl. The victim did not answer, and the suspect displayed pornographic movies on his television in the victim's view. The victim went [*sic*] to leave, and the suspect made a comment about a porno magazine lying on the floor, stating that the 'guy's ass is cute.'

"On the second occasion, the suspect Hale invited the victim [T.] and victim [H.] (12 yrs. old) into his trailer. Upon entering the trailer, both victims say that the suspect shut the blinds, and turned on a pornographic

---

[1] All statutory references are to the Penal Code unless otherwise stated.

station or movie on his television. They believe it was on a satellite dish station, as the suspect had to input the numbers into his satellite dish remote. During the three to four minutes the victims were inside, the suspect made a comment about the size of a man's penis on the television screen. The suspect's comment was something to the effect that his was bigger.

"As the victims left the location, suspect Hale made the comment to [victim T.] about taking pictures of him. Victim [H.] as he left heard the suspect tell him not to tell anybody or else he[] meaning the suspect will get in trouble. Both victims believe this second event happened in . . . March 2004, possibly on the 19th or 20th. The victims told their mothers about the incidents approximately two to three weeks later.

"This conduct would be a violation of 313.1 (A) PC, as both victims are minors (10 and 12), and the suspect is forty two. It is my opinion that this conduct is consistent with a subject who is attempting to gain the trust of minors to further entice them into more deviant behavior. Often times, pedophiles will start by befriending their victims and showing them pictures or images to arouse them. They will also use this against them to threaten that the victims would get in trouble if anyone found out they were watching pornography. Additionally, the suspects will often tell the[] victims not to say anything to anyone."

## DISCUSSION

### I

Hale contends the statement of facts does not state sufficient facts to support a warrant.

■ The magistrate issuing a warrant must make a practical, common-sense decision whether under all the circumstances set forth in the affidavit there is a fair probability that evidence of a crime will be found in a particular place. (*Illinois v. Gates* (1983) 462 U.S. 213, 238–239 [76 L.Ed.2d 527, 103 S.Ct. 2317].) ■ In reviewing the trial court's denial of a motion to suppress, we defer to the trial court's express or implied findings of fact that are supported by substantial evidence. (*People v. Jenkins* (2000) 22 Cal.4th 900, 969 [95 Cal.Rptr.2d 377, 997 P.2d 1044].) We independently review the trial court's application of the law to those facts. (*Ibid.*)

Here the statement of probable cause recited that Hale, a 42-year-old man, invited a 10-year-old boy into his home. Hale asked the boy what type of "porno" he wanted to watch: "boy on boy, girl on girl or boy on girl." Hale displayed pornographic movies on his television. On a second occasion, Hale

invited a 12 year old and the 10-year-old boy into his home. He again showed a pornographic movie, commenting on the size of a man's penis on the television screen. Hale asked the younger boy if he could take pictures of him, and told him not to tell anyone.

Hale argues the statement of probable cause simply makes the conclusory statement that the movies were pornographic. But the conclusion is supported by Hale's question to the younger boy whether he wanted to watch "boy on boy, girl on girl or boy on girl" as well as Hale's comment regarding the man's penis displayed on television. Contrary to Hale's claim, the magistrate did not need a more particular description of what was displayed in order to reach the conclusion the movies were probably pornographic.

Hale argues that, even assuming the movies were pornographic, that does not mean they qualify as harmful matter as defined in section 313, subdivision (a). Section 313, subdivision (a), defines harmful matter as "matter, taken as a whole, which to the average person, applying contemporary statewide standards, appeals to the prurient interest, and is matter which, taken as a whole, depicts or describes in a patently offensive way sexual conduct and which, taken as a whole, lacks serious literary, artistic, political, or scientific value for minors."

But Hale's actions as described in the statement of probable cause paint a picture of a pedophile who is using movies to arouse minors to seduce them. It is reasonable to conclude that the images Hale showed the boys were consistent with this purpose. Indeed, one would be surprised if the movies shown to the boys did not qualify as harmful matter. Not only did Bebon's statement show probable cause, but a magistrate would have to be unduly naive not to have issued the warrant.

## II

Hale contends Bebon did not swear that the contents of his statement of probable cause were true under penalty of perjury.

The search warrant contained the following: "Andrew J. Bebon, being sworn, says that on the basis of the information contained within this Search Warrant and Affidavit and the incorporated Statement of Probable Cause, he/she has probable cause to believe and does believe that the property described below is lawfully seizable pursuant to Penal Code Section 1524, as indicated below, and is now located at the locations set forth below. Wherefore, affiant requests that this Search Warrant be issued." Bebon signed as the affiant.

Hale made a motion to quash the warrant on the ground that the affidavit signed by Bebon attested to nothing more than the officer's belief that he had probable cause to search the property. Nowhere in the warrant did Bebon expressly attest that the facts stated in his statement of probable cause in support of the warrant were true.

In *People v. Leonard, supra*, 50 Cal.App.4th 878, the appellate court held that a search warrant affidavit, similar to that under consideration here, states no more than the officer's belief he has probable cause to conduct the search. The court reasoned that although the officer undoubtedly intended to include in his declaration that the facts stated are true, the affidavit did not do that. (*Id.* at p. 883.) The court concluded the failure to swear to the truth of the information provided to the magistrate was a defect of substance, not form. (*Ibid.*) At best, the officer is swearing to his belief in legal conclusions. (*Ibid.*)

■ But the oath appearing on the face of the warrant states more than the officer's belief he has probable cause to conduct a lawful search. It also states the belief is based on the incorporated statement of probable cause. This necessarily implies that the facts contained in the statement of probable cause are true. No officer could have a belief in a lawful search based on a false statement of probable cause. The test of the sufficiency of an officer's oath in support of a search warrant is whether he can be prosecuted for perjury should his statement of probable cause prove false. (See *Clifton v. Superior Court* (1970) 7 Cal.App.3d 245, 254–255 [86 Cal.Rptr. 612].) The oath here meets that test. Although we agree it would be better practice for the officer to specifically swear that the facts contained in the statement of probable cause are true, the failure to do so here does not render the warrant deficient. Unlike *Leonard*, we view this warrant to suffer from at best a " 'technical' " defect of form, not substance. (*People v. Leonard, supra*, 50 Cal.App.4th at p. 883.)

■ There is one additional factor in this case that distinguishes it from *Leonard*. At the hearing on the motion, the prosecution called Bebon as a witness. Over Hale's objection, Bebon testified that prior to issuing the warrant the magistrate made him orally swear "the facts contained, within the warrant were true." Hale argues that evidence of Bebon's oral oath is inadmissible under section 1526. Subdivision (a) of that section requires the magistrate to take the affidavit of the party seeking the warrant in writing. Subdivision (b) allows an oral oath in lieu of a written affidavit, but requires the oral oath to be recorded and transcribed.[2] It is uncontested that Bebon's

---

[2] Section 1526 provides in part: "(a) The magistrate, before issuing the warrant, may examine on oath the person seeking the warrant and any witnesses the person may produce, and shall take his or her affidavit or their affidavits in writing, and cause the affidavit or affidavits to be subscribed by the party or parties making them. [¶] (b) In lieu of the written

oral oath was not recorded or transcribed, but that is no matter. The written oath on the face of the warrant complied with subdivision (a). Even if it had not, Bebon could still be prosecuted for perjury under the oral oath.

The judgment is affirmed.

Yegan, J., and Coffee, J., concurred.

---

affidavit required in subdivision (a), the magistrate may take an oral statement under oath under one of the following conditions: [¶] (1) The oath shall be made under penalty of perjury and recorded and transcribed. The transcribed statement shall be deemed to be an affidavit for the purposes of this chapter."