[No. H030451. Sixth Dist. Apr. 18, 2007.]

THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
BRIAN J. UMANA, Real Party in Interest.

## COUNSEL

Law Offices of Robert von Raesfeld, Robert von Raesfeld and John K. Haggerty for Petitioner.

No appearance for Respondent.

Law Offices of John M. Ingle, John M. Ingle; Shea & Shea and Nicole Noelle Hancock for Real Party in Interest.

## OPINION

**BAMATTRE-MANOUKIAN, Acting P. J.—**

### I. INTRODUCTION

Real party in interest Brian J. Umana fell from his dormitory loft bed on February 15, 2003, when he was a sophomore living on campus at petitioner Board of Trustees of the Leland Stanford Junior University (Stanford). Exactly two years after the date of his fall, he filed a personal injury complaint in propria persona alleging that he had sustained a serious head injury in the fall due to Stanford's negligence. When Brian's deposition was taken by Stanford's attorney, Brian admitted that he had not actually signed the complaint and that his father, John Umana, had signed the complaint in Brian's name at Brian's request.[1]

Stanford subsequently filed a motion for summary judgment, contending that Brian's action was barred by the two-year statute of limitations (Code Civ. Proc., § 335.1)[2] because a valid complaint signed by either the plaintiff or the

---

[1] Hereafter, we will refer to Brian Umana and John Umana by their first names for purposes of clarity and not out of disrespect. (See *Rubenstein v. Rubenstein* (2000) 81 Cal.App.4th 1131, 1136, fn. 1 [97 Cal.Rptr.2d 707].)

[2] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

plaintiff's California-licensed attorney, as required by section 446, had not been filed during the limitations period. Brian immediately filed a motion for leave to file a first amended complaint that was signed by his attorney.

The trial court granted the motion for leave to file a first amended complaint and denied Stanford's motion for summary judgment. The court found that the evidence showed that Brian had exercised control over the content and filing of the original complaint, and therefore the signature defect could be cured by the filing of a properly signed first amended complaint that related back to the filing of the original complaint.

For reasons that we will explain, we conclude that the trial court did not err and therefore we will deny Stanford's petition for writ of mandate, which seeks extraordinary relief from both the order granting the motion for leave to file an amended complaint and the order denying the motion for summary judgment.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Original Complaint*

On February 15, 2005, Brian filed a personal injury complaint in propria persona against Stanford and Vaden Health Center. Brian was a sophomore at Stanford on February 15, 2003, when he allegedly sustained brain and head injuries as the result of a fall from his dormitory bed. According to Brian, at the time of the fall he was sleeping in a "lofted bed" that had been raised seven to nine feet off the floor with "lofting materials" provided by Stanford. The unsafe and defective lofting structure was built by his roommates with the university-provided materials and was not properly inspected by Stanford. Brian further claimed that Vaden Health Center, the student health center on campus, did not provide him with adequate medical care after the accident.

The complaint was signed "Brian J. Umana, Plaintiff pro se." However, when his deposition was taken by Stanford's attorney on March 9, 2006, Brian testified that the signature on the complaint was "mine signed in the hand of my father by my written request."

### B. *The Motion for Summary Judgment*

On April 11, 2006, Stanford filed a motion for summary judgment on the ground that Brian's action was barred by the section 335.1 two-year statute of limitations applicable to personal injury actions. Stanford argued that the complaint filed on February 15, 2003, was void because it was undisputed that neither Brian nor his attorney of record had signed the complaint, as

required by section 446, subdivision (a) and section 128.7, subdivision (a). In pertinent part, subdivision (a) of section 446 provides, "Every pleading shall be subscribed by the party or his or her attorney." Section 128.7, subdivision (a) provides in pertinent part, "Every pleading, petition, written notice of motion, or other similar paper shall be signed by at least one attorney of record in the attorney's individual name, or, if the party is not represented by an attorney, shall be signed by the party."

Stanford also relied on the decision in *Dixey v. Pollock* (1857) 8 Cal. 570 (*Dixey*) for the proposition that a complaint not signed by the party or a California-licensed attorney is void. In *Dixey*, the California Supreme Court determined that a complaint signed by the plaintiff's "attorney in fact," rather than his "attorney at law," "was not subscribed, either by the plaintiff or his attorney, and the suit must be considered as having been instituted by an entire stranger [to the plaintiff], and wholly without authority, and, therefore, void." (*Dixey*, *supra*, 8 Cal. at pp. 573–574.)

Based on these authorities, Stanford contended that Brian's action was time-barred because a valid complaint had not been filed prior to the expiration of the section 335.1 limitations period on February 15, 2005.

### C. *The Motion for Leave to File a First Amended Complaint*

On April 12, 2006, the day after Stanford filed its summary judgment motion, Brian brought an ex parte motion to file a first amended complaint. The proposed first amended complaint attached to the motion included several substantive changes and was signed by Brian's attorney of record. The trial court ordered Brian to file a noticed motion for leave to file a first amended complaint and set a hearing date of May 16, 2006.

Thereafter, on April 14, 2006, Brian filed a motion for leave to file a first amended complaint. He argued that he should be allowed to amend the complaint to cure the signature defect pursuant to section 128.7, subdivision (a), which provides in pertinent part that "[a]n unsigned paper shall be stricken unless omission of the signature is corrected promptly after being called to the attention of the attorney or party." Brian also argued that granting leave to file the first amended complaint would not prejudice Stanford and would be in the furtherance of justice.[3]

---

[3] The proposed first amended complaint also included several substantive changes and omitted Vaden Health Center as a defendant. These changes are not at issue in the present writ proceeding.

### D. Opposition to the Motion for Leave to File a First Amended Complaint

In its opposition to the motion for leave to file a first amended complaint, Stanford asked the trial court to consider Stanford's summary judgment motion first, because the motion for leave to file a first amended complaint would be rendered moot if the summary judgment motion was granted. Stanford also accused Brian of attempting to circumvent summary judgment procedure by seeking leave to file a first amended complaint. Regarding the merits, Stanford argued, among other things, that there was no evidence to show that Brian was "at any time unable to draft pleadings as a *pro se* litigant in a civil action."

### E. The Order Granting Leave to File a First Amended Complaint

On May 31, 2006, the trial court issued a written order granting the motion for leave to file a first amended complaint. During the hearing on the motion, held on May 16, 2006, the trial court stated that its decision to grant the motion was largely based on the policy of "the liberality of allowing people to amend their complaints even during the course of the trial."

### F. Opposition to the Motion for Summary Judgment

Brian opposed Stanford's summary judgment motion on the ground that the motion was moot in light of the filing of the properly signed first amended complaint on May 26, 2006, which superseded the original complaint. Brian further contended that the signature defect in the original complaint could be cured by amendment because the California Supreme Court indicated in *Dixey*, *supra*, 8 Cal. at page 573, that a signature defect in a pleading is a "mere irregularity" that does not invalidate the complaint. Additionally, Brian asserted his lawsuit had been instituted by a proper party, and not a stranger to the suit, because he had been involved in both the creation and filing of the original complaint as stated in the declarations filed by himself and his father. Finally, Brian maintained that under the relation-back doctrine his action was deemed to be filed on the day the original complaint was filed and was not barred by the section 335.1 two-year limitations period.

### G. The Order Denying the Summary Judgment Motion

The trial court denied the summary judgment motion in a written order filed on July 6, 2006. Relying on the decisions in *Dixey*, *supra*, 8 Cal. 570 and *Canadian Bank of Commerce v. Leale* (1910) 14 Cal.App. 307 [111 P. 759], the trial court found that "[Brian] presented competent evidence

showing that he exercised control over the content of the complaint and the filing of the complaint. In these circumstances, the omission of [Brian]'s signature from the complaint is but an irregularity that has now been cured by [Brian's] filing of a first amended complaint through his attorney. The filing of the amended complaint relates back to the filing of the original complaint and is within the applicable limitations period."

### H. Writ Proceedings

On July 26, 2006, Stanford filed a petition for writ of mandate in which it sought extraordinary relief from both the order granting Brian's motion for leave to file a first amended complaint and the order denying Stanford's summary judgment motion. We requested further briefing and issued an order to show cause why the relief sought in the petition should not be granted. For the reasons explained below, we conclude that the petition for writ of mandate should be denied.

## III. DISCUSSION

### A. The Parties' Contentions

In its writ petition, Stanford emphasizes its argument that section 446 and the *Dixey* decision must be construed to establish a rule that a complaint not signed by the hand of the plaintiff or his or her California-licensed attorney is of no legal effect and void. Because Brian's father, who is not a licensed California attorney, "falsely signed" the original complaint, Stanford argues that the complaint is void and the fact that Brian authorized his father to sign the complaint is immaterial. Additionally, Stanford asserts that Brian's father violated Penal Code section 115[4] when he "falsely signed" the complaint in Brian's name.

Stanford also challenges the trial court's determination that the properly signed first amended complaint related back to the improperly signed original complaint, contending that the relation-back doctrine does not apply to a void complaint. Finally, Stanford argues that "requiring properly signed complaints and voiding improperly signed ones, serves critically important public policies by firmly deterring each of the following: (1) injurious initiation of actions by non-parties and non-California licensed attorneys; (2) the injurious practice of persons using non-attorneys to initiate actions in their names and

---

[4] Penal Code section 115, subdivision (a) provides, "(a) Every person who knowingly procures or offers any false or forged instrument to be filed, registered, or recorded in any public office within this state, which instrument, if genuine, might be filed, registered, or recorded under any law of this state or of the United States, is guilty of a felony."

then disavowing those actions; and (3) expensive subsequent satellite litigation (of the 'he said/she said' variety) on the difficult issue of whether the non-party and/or non-California licensed attorney was acting under the direction and/or for the benefit of a named plaintiff."

For these reasons, Stanford contends that the trial court should have heard the summary judgment first and granted the motion, then denied the motion for leave to file a first amended complaint as moot.

In opposition to the petition, Brian asserts the signature on the original complaint was valid under the amanuensis[5] rule, which is an argument that he did not expressly make in the trial court. The amanuensis rule provides that "[a] signature to an instrument may be attached by . . . the hand of another, at the request of a party . . . ." (*Kadota Fig Assn. v. Case-Swayne Co.* (1946) 73 Cal.App.2d 815, 819 [167 P.2d 523]; see *Estate of Stephens, supra,* 28 Cal.4th at pp. 670–671.) According to Brian, his father acted as his amanuensis when he subscribed Brian's name to the original complaint at Brian's direction and with his consent, and therefore the signature was legally effective under section 446.

Alternatively, Brian argues that even if the signature on the original complaint is deemed irregular, the trial court had the discretion to permit the filing of the first amended complain to cure the irregularity. Brian emphasizes the public policies that complaints are to be liberally construed, pursuant to section 452,[6] and disputes should be resolved on their merits. Finally, Brian points out that Penal Code section 115 has never been applied to the filing of a complaint. Brian therefore contends that the trial court correctly granted the motion for leave to file a first amended complaint and denied the motion for summary judgment.

We will first address the order granting the motion for leave to file a first amended complaint, because if that order is correct, the motion for summary judgment is rendered moot.

### B. *The Order Granting Leave to File a First Amended Complaint.*

#### 1. *The Standard of Review*

Our analysis is governed by the standard of review that applies to an order granting leave to amend a complaint. " 'Leave to amend a complaint is . . .

---

[5] "The Oxford English Dictionary (2d ed. 1989) defines 'amanuensis' as 'one who copies or writes from the dictation of another.' " (*Estate of Stephens* (2002) 28 Cal.4th 665, 671, fn. 1 [122 Cal.Rptr.2d 358, 49 P.3d 1093].)

[6] Section 452 provides, "In the construction of a pleading, for the purpose of determining its effect, its allegations must be liberally construed, with a view to substantial justice between the parties."

entrusted to the sound discretion of the trial court. ". . . The exercise of that discretion will not be disturbed on appeal absent a clear showing of abuse. More importantly, the discretion to be exercised is that of the trial court, not that of the reviewing court. Thus, even if the reviewing court might have ruled otherwise in the first instance, the trial court's order will yet not be reversed unless, as a matter of law, it is not supported by the record." ' [Citations.]" (*Branick v. Downey Savings & Loan Assn.* (2006) 39 Cal.4th 235, 242 [46 Cal.Rptr.3d 66, 138 P.3d 214], italics omitted.)

However, where the resolution of an issue involves the interpretation of a statute, our review is independent of the trial court. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956].) We will therefore resolve all questions of statutory interpretation in the present case under the independent standard of review.

### 2. *The General Rules Pertaining to Amendment of Pleadings*

The governing rule is set forth in section 473, subdivision (a)(1), which provides in pertinent part: "The court may, in furtherance of justice, and on any terms as may be proper, allow a party to amend any pleading or proceeding by adding or striking out the name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect . . . ." (See *Atkinson v. Elk Corp.* (2003) 109 Cal.App.4th 739, 760 [135 Cal.Rptr.2d 433].) Additionally, section 576 provides, "Any judge, at any time before or after commencement of trial, in the furtherance of justice, and upon such terms as may be proper, may allow the amendment of any pleading . . . ."

■ It is well established that "California courts have 'a policy of great liberality in allowing amendments at any stage of the proceeding so as to dispose of cases upon their substantial merits where the authorization does not prejudice the substantial rights of others.' [Citation.] Indeed, 'it is a rare case in which "a court will be justified in refusing a party leave to amend his [or her] pleading so that he [or she] may properly present his [or her] case." ' [Citation.]" (*Douglas v. Superior Court* (1989) 215 Cal.App.3d 155, 158 [263 Cal.Rptr. 473].) Thus, absent a showing of prejudice to the adverse party, the rule of great liberality in allowing amendment of pleadings will prevail. (*Higgins v. Del Faro* (1981) 123 Cal.App.3d 558, 564 [176 Cal.Rptr. 704].)

### 3. *Amendment to Correct a Signature Defect*

■ California appellate courts have held that a pleading may be amended for the purpose of curing a signature defect. In *United Farm Workers of America v. Agricultural Labor Relations Bd.* (1985) 37 Cal.3d 912, 915 [210 Cal.Rptr. 453, 694 P.2d 138], the California Supreme Court ruled that failure

to verify a pleading, where the verification is required by statute, "is a mere defect curable by amendment." Moreover, "[a]mendments may cure such a defect even when submitted after the statute of limitations has run on the time to file the original complaint, since verification of a complaint is not a jurisdictional requirement." (*Ibid.*; see also *Perlman v. Municipal Court* (1979) 99 Cal.App.3d 568, 574 [160 Cal.Rptr. 567] [failure to verify a writ petition is a procedural defect that may be cured by amendment].)

█ Similarly, it has been held that an unsigned complaint is an irregularity, rather than a "nullity," that may be cured by amendment. (*Canadian Bank of Commerce v. Leale, supra*, 14 Cal.App. at p. 309.) As stated in *Hellings v. Wright* (1916) 29 Cal.App. 649, 654–655 [156 P. 365], failure to sign a complaint "is a mere matter of form" and does not constitute a jurisdictional defect. Thus, a trial court's dismissal of an action due to the omission of counsel's signature on a first amended complaint was reversed where it was shown that the defect was curable because "counsel is willing (although belatedly) to sign and thereby attest to the arguable legal and evidentiary merit of the allegations." (*Vaccaro v. Kaiman* (1998) 63 Cal.App.4th 761, 768–769 [73 Cal.Rptr.2d 829].)

In accordance with the above authorities, the appellate court in *CLD Construction, Inc. v. City of San Ramon* (2004) 120 Cal.App.4th 1141, 1146, 1149–1150 [16 Cal.Rptr.3d 555], rejected the defendant's contention that a complaint filed by a corporation was "incurably defective" and therefore void under section 446 because it was subscribed by the corporation's president, rather than the corporation's attorney. The appellate court stated, "we are persuaded it is more appropriate and just to treat a corporation's failure to be represented by an attorney as a defect that may be corrected, on such terms as are just in the sound discretion of the court. First and foremost, this approach honors the cornerstone jurisprudential policies that, in furtherance of justice, complaints are to be liberally construed (§ 452) and disputes should be resolved on their merits [citation]." (*CLD Construction, Inc. v. City of San Ramon, supra*, 120 Cal.App.4th at p. 1149.)

### 4. *The Subscription Requirement*

The threshold issue in the present case is Stanford's claim that the complaint filed on February 13, 2005, is incurably defective and not subject to amendment because the complaint was signed in the name of plaintiff, Brian Umana, by the hand of his father, John Umana. Stanford distinguishes the decisions discussed above that allowed amendment to cure a signature defect on the ground that those cases involved an omitted signature, as opposed to (in Stanford's words) the "falsely signed" complaint at issue here.

To resolve Stanford's claim, we will review the requirement under California law that a complaint be signed. Two sections of the Code of Civil Procedure, section 446 and section 128.7, provide a signature requirement. We will discuss each section in turn.

### a. *Section 446*

Section 446 provides in pertinent part, "Every pleading shall be subscribed by the party or his or her attorney." The word "subscribe" is not defined in section 446 or in the Code of Civil Procedure. However, in 1897 the California Supreme Court defined "to subscribe" as "to attest or give consent, or evidence knowledge, by underwriting usually (but not necessarily) the name of the subscriber." (*California Canneries Co. v. Scatena* (1897) 117 Cal. 447, 450 [49 P. 462].) More recently, our Supreme Court stated that "[t]he word 'subscribe' is defined as follows: 'To write (as one's name) underneath: sign (one's name) to a document . . . to sign with one's own hand.' (Webster's Third New Internat. Dict. (1961).)" (*People v. Pierce* (1967) 66 Cal.2d 53, 59, fn. 5 [56 Cal.Rptr. 817, 423 P.2d 969].)

Subsequent appellate court decisions have stated that to "subscribe" means " ' "to sign with one's own hand." ' " (*Blum v. Superior Court* (2006) 141 Cal.App.4th 418, 427 [45 Cal.Rptr.3d 902]; see *Stockinger v. Feather River Community College* (2003) 111 Cal.App.4th 1014, 1026 [4 Cal.Rptr.3d 385]; *In re Marriage of Reese & Guy* (1999) 73 Cal.App.4th 1214, 1222 [87 Cal.Rptr.2d 339]; *People v. Egan* (1983) 141 Cal.App.3d 798, 801, fn. 2 [190 Cal.Rptr. 546].) Accordingly, the plain language of section 446 requires a complaint to be signed either by the hand of the plaintiff or by the hand of the plaintiff's attorney.[7]

However, section 446 does not expressly state the purpose of the subscription requirement or provide any remedy for a subscription defect. To construe section 446, we will follow the established principles of statutory interpretation.

"[O]ur first task in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining such

---

[7] We observe that section 17 provides, in pertinent part, that the word "subscription" includes signature by mark: "signature or subscription includes mark, when the person cannot write, his or her name being written near it by a person who writes his or her own name as a witness; provided, that when a signature is by mark it must, in order that the same may be acknowledged or may serve as the signature to any sworn statement, be witnessed by two persons who must subscribe their own names as witness thereto." Additionally, as Brian points out in his return, there is authority for the proposition that a printed signature satisfies the subscription requirement. (*Hancock v. Bowman* (1874) 49 Cal. 413, 414.)

intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose." (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386–1387 [241 Cal.Rptr. 67, 743 P.2d 1323].) "The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. [Citations.] Where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation. [Citation.] Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent." (*Id.* at p. 1387; see *Matea v. Workers' Comp. Appeals Bd.* (2006) 144 Cal.App.4th 1435, 1444–1445 [51 Cal.Rptr.3d 314].)

We find the legislative history of section 446 and the wider historical circumstances of its enactment to be informative. Section 446 was derived from section 51 of the California Practice Act of 1851, which included the first California codification of the subscription requirement. Section 51 provided, "Every pleading shall be subscribed by the party, or his attorney, and when the complaint is verified by affidavit, the answer shall be verified also, except as provided in the next section." (Stats. 1851, ch. 5, § 51, p. 58.)

One legal commentator has noted the background of the Practice Act: "California adopted code pleading in 1851. The Practice Act of that year was based on the code which David Dudley Field had prepared for New York three years before; Field's brother, Stephen J. Field, later a Justice of the United States Supreme Court, came to California in 1850 and was the author and prime mover of the California legislation. The 1851 Practice Act was succeeded, in 1872, by a Code of Civil Procedure which, much amended, remains in effect today. [¶] The California Code was the model which many western states followed when adopting code pleading. It has always enjoyed a liberal interpretation, and indeed the draftsmen of the federal rules drew heavily on the California provisions." (Wright, *Procedural Reform in the States* (1959) 24 F.R.D. 85, 91.)[8]

Another legal commentator has described the history of the signature requirement in code pleading prior to 1851. "[A]nother traditional means by which courts avoided litigation abuse was through a verification or signature

---

[8] The development of the Code of Civil Procedure in California is recounted in detail in Miller, *History of the California Code of Civil Procedure* (1955) formerly published at 23 West's Annotated Codes 1, available now at <http://web.archive.org/web/20060427225625/www.sandiego.edu/lrc/ccp.html> [as of Apr. 18, 2007].)

requirement. The requirement varied depending on whether the case was based in equity or law. Beginning in the early sixteenth century, in the days of Sir Thomas Moore, English chancery courts required an attorney to sign every bill of complaint. The exact meaning and effect of this early equity signature requirement are subject to debate—some contend that a signature attested that 'good ground' supported the pleading and others say that it was merely an attestation as to form . . . . [¶] As American law makers began to codify the general equity practice in the early nineteen century, they included the signature requirement in their new rules. [¶] On the law side, courts using common law pleading required an 'offer of proof' that announced that the plaintiff could produce proof of his [or her] charges. . . . The code pleading systems required the plaintiff to 'subscribe' the complaint, but left to the plaintiff's discretion whether to also verify the complaint. The subscription was merely a signature, and the optional verification attested to the pleader's belief and knowledge as to the truth of the pleading . . . ." (Andrews, *Motive Restrictions on Court Access: A First Amendment Challenge* (2000) 61 Ohio St. L.J. 665, 697–699, fns. omitted.)

Based on our review of the language of section 446, its legislative history and the wider historical circumstances of its enactment, we find no suggestion that the Legislature intended a plaintiff's failure to comply with the subscription requirement of section 446 to constitute an incurable defect. Moreover, for the reasons discussed below, we find that section 128.7 also does not support Stanford's contention that a signature defect of the type at issue in the present case renders the complaint void and not subject to amendment.

b. *Section 128.7*

Section 128.7, subdivision (a) provides in pertinent part, "Every pleading, petition, written notice of motion, or other similar paper shall be signed by at least one attorney of record in the attorney's individual name, or, if the party is not represented by an attorney, shall be signed by the party."

Subdivision (b) of section 128.7 states the purpose of the signature requirement: "By presenting to the court, whether by signing, filing, submitting, or later advocating, a pleading, petition, written notice of motion, or other similar paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, all of the following conditions are met: [¶] (1) It is not being presented primarily for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. [¶] (2) The claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of

new law. [¶] (3) The allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. [¶] (4) The denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief."

■ Section 128.7 also provides remedies for noncompliance with the signature requirement. Section 128.7, subdivision (a) states in pertinent part, "An unsigned paper shall be stricken unless omission of the signature is corrected promptly after being called to the attention of the attorney or party." Thus, section 128.7 does not provide that a signature defect in a complaint renders the complaint void and incapable of amendment. To the contrary, it has been stated that "the 'purpose of section 128.7 is to deter frivolous filings, not to punish parties. [Citation.] This purpose is forwarded by allowing the offending party to avoid sanctions altogether by appropriately correcting the sanctionable conduct after being alerted to the violation.' [Citations.]" (*Hart v. Avetoom* (2002) 95 Cal.App.4th 410, 414 [115 Cal.Rptr.2d 511].)

Section 128.7 was modeled almost word for word on rule 11 of the Federal Rules of Civil Procedure (28 U.S.C.) (hereafter Rule 11).[9] (*Hart v. Avetoom, supra,* 95 Cal.App.4th at p. 413.) Rule 11 was adopted in 1938, with the intention of "requiring an attorney to certify, prior to filing an action, (1) that he had read the pleadings; (2) that to the best of his knowledge, information and belief, good grounds existed to support the pleading; and (3) that the pleading was not interposed for delay." (Comment, *New Frivolous Litigation Law in Texas: The Latest Development in the Continuing Saga* (1996) 48 Baylor L.Rev. 421, 425.) Moreover, "[t]he original version consolidated certain provisions found in state codes requiring 'subscription' of pleadings, Federal Equity Rules 21 (scandal and impertinence) and 24 (signature of counsel), and English practice." (*Id.* at p. 424, fn. 11.)

The original version of Rule 11 also required unrepresented parties to sign pleadings. (5A Wright & Miller, Federal Practice & Procedure (3d ed. 2004) Purpose and Effect of Signature, § 1334, p. 538.) "The purpose of requiring

---

[9] Rule 11, subdivision (a) provides in pertinent part, "Every pleading, written motion, and other paper shall be signed by at least one attorney of record in the attorney's individual name, or, if the party is not represented by an attorney, shall be signed by the party. Each paper shall state the signer's address and telephone number, if any. Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit. An unsigned paper shall be stricken unless omission of the signature is corrected promptly after being called to the attention of the attorney or party."

unrepresented parties to sign their pleadings was not to place them under an obligation to investigate as thoroughly as would an attorney whether there were reasonable grounds to support the action. Rather, it was to make certain that those named as parties in an action in which there was no lawyer representing them had actually assented to the filing of the action on their behalf." (*Ibid.*; see *Gonzales v. Wyatt* (5th Cir. 1998) 157 F.3d 1016, 1021; *Huffman v. Nebraska Bureau of Vital Statistics* (D.Neb. 1970) 320 F.Supp. 154, 156.)

█ Because section 128.7 was modeled on Rule 11, " '[i]n examining the provisions of section 128.7, California courts may look to federal decisions interpreting the federal rule.' [Citations.]" (*Hart v. Avetoom, supra*, 95 Cal.App.4th at p. 413.) The federal courts have indicated that a signature defect in a complaint is not a fatal defect. "A 'bungled signature' on a pleading or a pleading filed inadvertently without any signature may be viewed as a technical defect and not a substantial violation of Rule 11. 'The law is clear that the pleading shall not be stricken unless the pleader fails to sign it promptly after being alerted to the defect.' [Citations.]" (*Hadlock v. Baechler* (W.D.Ark. 1991) 136 F.R.D. 157, 159; see also *Burak v. Commonwealth of Pennsylvania* (E.D.Pa. 1972) 339 F.Supp. 534, 535, fn. 2.)

In *Covington v. Cole* (5th Cir. 1976) 528 F.2d 1365, 1369, the complaint was signed by the plaintiff's wife as " 'attorney in fact' " for the plaintiff. The federal court stated, "[w]ithout deciding whether a signature by a spouse as 'attorney in fact' can be sufficient under Rule 11, we can easily conclude that sua sponte dismissal with prejudice is not a proper disposition in the face of this arguable defect, at most a technical defect, in the complaint. Even if it might have been appropriate for the trial court to dismiss the complaint without prejudice to its refiling with the plaintiff's signature, we think that in the present posture of the case, the interests of justice require that we treat the complaint, as did the district court, as properly filed, and proceed to the merits of the appeal." (*Id.* at pp. 1369–1370, italics & fn. omitted.)

The court in *Covington v. Cole* also observed that "[i]n situations in which a party is not represented by an attorney, the Rule 11 signature requirement seems designed mainly to assure the court that the named party is actually in assent to the filing of an action on his behalf. [Citation.] When a court is otherwise assured that the party endorses the pleading, even a complete failure to sign has been termed a mere 'technical defect.' [Citations.]" (*Covington v. Cole, supra*, 528 F.2d at p. 1369, fn. 7; see *Gonzales v. Wyatt, supra*, 157 F.3d at p. 1021.)

 Our review of the federal authorities convinces us that under Rule 11 a signature defect does not warrant striking of the complaint or dismissal of the action unless the plaintiff fails to timely remedy the defect or the court determines that the plaintiff did not actually assent to the filing of the action. We therefore determine that section 128.7 may be similarly interpreted to allow correction of a signature defect in a complaint after the defect is called to the attention of the plaintiff, where the correction is promptly made and the court finds that the plaintiff actually assented to the filing of the action.

We note that our determination is consistent with the decisions of state courts that have construed a statutory signature requirement based on Rule 11. In *Save Our Creeks v. City of Brooklyn Park* (Minn. 2005) 699 N.W.2d 307, 309, the Minnesota Supreme Court considered the issue of whether " 'a complaint filed and signed on behalf of a corporate entity by a non-lawyer is a legal nullity.' " The state high court answered the question in the negative, ruling that the signature defect was cured by adding the signature of the corporation's attorney and that the amendment related back to the date of the original complaint. (*Id.* at pp. 310–312.) The appellate court of New York similarly granted the plaintiff leave to file and serve a properly signed complaint. (*Cardo v. Board of Managers Jefferson Vil.* (N.Y.App.Div. 2006) 29 A.D.3d 930, 931 [817 N.Y.S.2d 694] [granting leave to file a complaint properly signed under N.Y. Comp. Codes R. & Regs., tit. 22, § 130-1.1a(a)].)

### 5. *Dixey v. Pollock*

Stanford relies on the decision in *Dixey, supra,* 8 Cal. 570 for its contention that the "falsely signed" signature on Brian's complaint renders the complaint void and not subject to amendment. We are not convinced that *Dixey* supports Stanford's position.

The issue addressed by the California Supreme Court in *Dixey* was the priority of three writs of attachments on the same goods. Plaintiff Dixey had obtained the last writ of attachment. He moved for an order requiring the sheriff to pay him the proceeds of the attached goods, asserting that the two prior attachments were "void for irregularity." (*Dixey, supra,* 8 Cal. at p. 570.) The two prior attachments were obtained in two other cases, *Adams v. Pollock* and *Pollock v. Pollock.* Each case had a different procedural posture.

In *Adams v. Pollock,* "the complaint was a printed blank, and the blanks were filled up by the clerk of the Court at the request of the plaintiff, but no

name was subscribed at the end of the complaint until the next day . . . . It was then signed by the clerk, in this way, 'R. M. Adams, plaintiff's attorney.' " (*Dixey, supra,* 8 Cal. at p. 572.) Dixey argued that the complaint in *Adams v. Pollock* was void because it had not been subscribed and therefore the attachment could not issue. Our Supreme Court acknowledged that "[u]nder our system of practice, an action is commenced by the filing of a complaint, and every pleading must be subscribed by the party or his attorney." (*Ibid.*) However, the court ruled that the complaint was not void because "[t]he conduct of the clerk in filling the blank was not correct; but still it was a mere irregularity. And it is well settled that a stranger cannot interfere upon the ground of irregularity." (*Id.* at p. 573.)

In *Pollock v. Pollock,* "the complaint was subscribed, 'R. H. Adams, plaintiff's attorney.' " (*Dixey, supra,* 8 Cal. at p. 573.) However, R. H. Adams was the plaintiff's attorney in fact, not his attorney at law. Our Supreme Court ruled that the complaint "was drawn and filed by a party who had no authority to do so, and was not subscribed, either by the plaintiff or by his attorney, and the suit must be considered as having been instituted by an entire stranger to [the plaintiff], and wholly without authority, and, therefore, void." (*Ibid.*) The court in *Dixey* accordingly concluded that the attachment in *Adams v. Pollock* had first priority, that Dixey's attachment had second priority, and that the plaintiff in *Pollock v. Pollock* was left "to his remedy, if any, against his agent." (*Ibid.*)

We believe that *Dixey* does not aid Stanford because the decision focuses solely on the validity and priority of the three competing attachments. Therefore, the question of the availability of amendment to cure the defective complaints was not before the court. " 'It is axiomatic that cases are not authority for propositions not considered.' [Citation.]" (*In re Marriage of Cornejo* (1996) 13 Cal.4th 381, 388 [53 Cal.Rptr.2d 81, 916 P.2d 476].) Consequently, the decision in *Dixey* cannot be construed to support Stanford's contention that the signature defect at issue in the present case rendered the original complaint void and not subject to amendment.

Moreover, the complaint in *Pollock v. Pollock* was deemed void because it was signed by R. H. Adams, who was the attorney in fact of the plaintiff. In modern times, the federal courts have explained that "where the document is tendered and signed by a nonlawyer on behalf of another, then there comes into play the underlying principle itself, namely that in federal court a party can represent himself or be represented by an attorney, but cannot be represented by a nonlawyer." (*Gonzales v. Wyatt, supra,* 157 F.3d at p. 1021.)

The California Supreme Court in *Dixey* articulated a similar principle, stating that an attorney in fact "had no authority to conduct the proceedings, as he was not an attorney at law." (*Dixey, supra,* 8 Cal. at p. 573.) This principle is not applicable to the case at bar, where Brian's father signed the complaint in Brian's name, not his own name as attorney in fact.

At most, the decision in *Dixey* tends to support Brian's contention that the signature defect in his original complaint is a mere irregularity that may be cured by amendment. As we have noted, our Supreme Court deemed a clerk's act of signing the name of the plaintiff's attorney at law, "R. M. Adams," on the complaint in *Adams v. Pollock* to be a "mere irregularity." (*Dixey, supra,* 8 Cal. at p. 572.) We find these facts analogous to the case at bar, where Brian's father, John, signed Brian's name to the original complaint. In both instances, the signature was in the name of a person authorized to conduct the proceedings.

For these reasons, we determine that the decision in *Dixey* cannot be read to support Stanford's contention that the complaint in the present case is void and not subject to amendment to cure the signature defect.

### 6. *The Trial Court Did Not Err*

We conclude that the trial court did not err in granting Brian's motion for leave to file a first amended complaint signed by his attorney of record, for two reasons. First, as we have discussed, neither section 446 nor section 128.7 supports the proposition that a complaint signed in the name of the plaintiff by the hand of another is void due to the incurable signature defect. The decisions of the California and federal courts instead support a contrary interpretation that a signature defect is a mere technical irregularity. (*Canadian Bank of Commerce v. Leale, supra,* 14 Cal.App. at p. 309; *Hellings v. Wright, supra,* 29 Cal.App. at pp. 654–655; *Vaccaro v. Kaiman, supra,* 63 Cal.App.4th at pp. 768–769; *Covington v. Cole, supra,* 528 F.2d at pp. 1369–1370; *Hadlock v. Baechler, supra,* 136 F.R.D. at p. 159.)

Second, we reiterate that amendment of the complaint is available to cure a signature defect. We construe section 128.7, as Rule 11 has been construed, to allow correction of a signature defect in a complaint after the defect is called to the attention of the plaintiff, where the correction is promptly made and the court finds that the plaintiff actually assented to the filing of the action.

(*Covington v. Cole, supra,* 528 F.2d at pp. 1369–1370; *Hadlock v. Baechler, supra,* 136 F.R.D. at p. 159; *Gonzales v. Wyatt, supra,* 157 F.3d at p. 1021.) This construction is also supported by section 473, subdivision (a)(1), which authorizes amendment of a pleading to correct "a mistake in the name of a party, or a mistake in any other respect."

In California, the correction may be made by amending the complaint after the statute of limitations has run. (*United Farm Workers of America v. Agricultural Labor Relations Bd., supra,* 37 Cal.3d at p. 915 [authorizing amendment to cure a verification defect after expiration of the limitations period].) Allowing amendment of a complaint to cure a signature defect after expiration of the limitations period is consistent with California's liberal policy of allowing amendment so that cases may be disposed of on the merits. (*Douglas v. Superior Court, supra,* 215 Cal.App.3d at p. 158.)

In the present case, the record reflects that Brian attempted to cure the signature defect in his original complaint by seeking leave to amend the complaint shortly after he testified in his deposition that his name had been signed by his father. The record also shows, and Stanford does not dispute, that Brian actually assented to the filing of the original complaint. The trial court therefore properly allowed amendment of the complaint to cure the signature defect after the expiration of the section 335.1 two-year statute of limitations.

Having reached this conclusion, we need not address the issue of whether the amanuensis rule applies to a signature required by section 446 and section 128.7 on a complaint. We also need not address Stanford's contention that John violated Penal Code section 115 by signing the complaint in Brian's name.

C. *The Order Denying the Motion for Summary Judgment*

Stanford's summary judgment motion was based on the contention that Brian failed to file a validly signed complaint prior to the expiration of the section 335.1 two-year limitations period and therefore his action was time-barred. Because we have concluded that the trial court properly granted leave to file an amended complaint that corrected the signature defect and related back to the timely filed original complaint, we further conclude that the motion for summary judgment was properly denied.

## IV. DISPOSITION

The petition for writ of mandate is denied. Costs in this original proceeding are awarded to real party in interest Brian J. Umana.

Mihara, J., and McAdams, J., concurred.