Filed 7/5/2019

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE


| | |
|---|---|
| PRIMO HOSPITALITY GROUP, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> STEVEN H. HANEY et al., <br><br> Defendants and Respondents; <br><br> MARC LIBARLE, <br><br> Objector and Appellant. | B283030 <br> (Los Angeles County <br> Super. Ct. No. BC587708) |


APPEAL from order of the Superior Court of Los Angeles County, Michael J. Raphael, Judge.  Reversed.

Marc Libarle, in pro. per., for Objector and Appellant.

Collins Collins Muir & Stewart, Robert H. Stellwagen, David C. Moore, Joshua A. Cohen, for Defendant and Respondent John Torbett.

––––––––––––––––

Plaintiffs filed a legal malpractice action, then retained a new attorney.  The attorney filed a declaration stating that he represented the plaintiffs.  A defendant in the action immediately served the attorney with a motion for sanctions under Code of Civil Procedure section 128.7 on the ground that the complaint filed by prior counsel lacked merit.[1]  After the motion for sanctions was filed several months later, the trial court granted it.  On appeal from the order awarding sanctions, the attorney contends that he was denied the notice and safe harbor required under section 128.7, because the motion served on him did not identify any specific conduct he had taken that violated the statute.  We conclude there is no evidence that the attorney presented the complaint to the court within the meaning of section 128.7 before he was served with the motion for sanctions.  A new attorney's filing of a declaration merely notifying the court of a change in counsel does not constitute presenting the complaint to the court under section 128.7.  We also conclude that a sanctions order cannot be supported solely by evidence of conduct occurring after the motion is served, because a motion for sanctions under section 128.7 must

––––––––––––––––

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

2

describe the specific conduct taken by the party to be sanctioned and allow a safe harbor period to withdraw or appropriately correct the sanctionable conduct. There was no evidence to support finding the attorney violated section 128.7 before he was served with the motion for sanctions, and therefore, we reverse the order awarding sanctions.

## FACTUAL AND PROCEDURAL BACKGROUND

### Underlying Lawsuit between Primo and Americana

In October 2007, Primo Hospitality Group, Inc., and its principals Charlton Lui and Anthony Riviera (collectively Primo), entered into a commercial lease with The Americana at Brand, LLC (Americana) for space at Americana's mall. Primo opened a restaurant in the space. In May 2009, the floors sustained water damage.

The law firm of Novian & Novian, LLP, on behalf of Primo, filed a negligence action against Americana and its management company in 2010. Primo repaired the floor in May 2010, but stopped paying rent in June 2010. After the floors were damaged in a second incident, Primo vacated the space in November 2010. Americana filed a cross-complaint against Primo for breach of contract based on unpaid rent.

The Novian firm withdrew on June 22, 2011. Primo retained the law firm of Haney Roderick Torbett & Arnold, LLP (the Haney firm), in August 2011. John Torbett was the principal attorney of the Haney firm. Primo said a

3

pressure-washing company hired by Americana caused the water damage when the pressure-washing equipment forced water under the threshold of the door to the restaurant. Primo had repeatedly requested that Americana stop pressure-washing, but Americana refused. Primo said the Novian firm advised Primo to vacate the premises and cease paying rent.

A jury trial was held in 2012. The jury found in favor of Primo on the causes of action for negligence, trespass, and nuisance. The jury found in favor of Americana on the remaining causes of action, including breach of the lease agreement. The trial court entered judgment in favor of Primo against Americana in the amount of $840,000, and against the management company in the amount of $560,000. However, the jury found Primo was liable to Americana in the amount of $1,275,250 for breach of the lease agreement. The trial court awarded attorney fees of $1,250,000 to Americana under the lease agreement.

**Legal Malpractice Action**

On July 10, 2015, Primo filed the present legal malpractice action against defendants and respondents Steven Haney, Haney Law Group (individually and as the successor to the Haney firm), Haney & Young, LLP, and Darren McBratney (collectively referred to as the Haney defendants) and Torbett. Primo alleged that the defendants negligently formulated the special verdict form in the

4

underlying action against Americana, because the form failed to ask whether Primo was excused from performance under the lease. Primo also alleged the defendants negligently failed to name certain entities as defendants in the underlying action, including the company that performed the pressure washing.

On January 6, 2016, the defendants filed a motion for summary judgment on the grounds that Primo could not establish causation or damages. The jury in the underlying action, in response to other questions, found Primo did not perform as required under the lease, Americana performed as required by the lease, all conditions for Primo to perform were met, and Primo was not constructively evicted. Defendants also argued that the entities who were not named as defendants in the underlying action had no potential liability, or the failure to name them was harmless.

On July 22, 2016, Torbett filed a second motion for summary judgment, joined in by the Haney defendants, on the ground that Primo's claims were barred by the defense of unclean hands. The motion argued that Primo made false representations and concealed material information. For example, Primo concealed that the Novian firm's advice was to continue paying rent and not vacate the premises. Primo decided to vacate and forfeit the lease because of increased competition from other restaurants. As a result, Primo could not assert constructive eviction for breach of the lease agreement. Primo also failed to disclose that their insurer concluded the water damage resulted from an accidental

appliance leak within the restaurant and the insurer provided Primo with substantial insurance payments.  The evidence in support of the second motion for summary judgment included correspondence received in discovery from the Novian firm and Primo's insurance company.

**Motion for Sanctions under Section 128.7**

Torbett's counsel served Primo's first attorney in the legal malpractice action, Richard Weiner, with a motion for sanctions on the ground that the legal malpractice action lacked merit.  Weiner filed a motion to withdraw as counsel, which the trial court granted on August 31, 2016.  The trial court set a hearing on September 29, 2016, for a status report re new counsel and ordered that Primo have new counsel at that hearing.  On August 31, 2016, Torbett's counsel sent a letter to Lui and Riviera advising them that the action lacked merit.  Torbett served a motion for sanctions with the letter.

On September 28, 2016, Torbett notified Primo that he was filing an ex parte application for an order dismissing the action for failing to appoint new counsel and proceed with depositions.  Appellant Marc Libarle filed a declaration with the court that day stating he had been retained to represent the plaintiffs in the case, but was unavailable to appear at the hearing on the ex parte application scheduled for September 29, 2016.  He had contacted opposing counsel to inform them of the representation and the schedule conflict.

Lui appeared at the hearing on September 29, 2016, and informed the trial court that Libarle had been retained to represent all three plaintiffs. Torbett argued that the case should be dismissed because Primo had not complied with the court order to retain counsel to be present at the hearing. The trial court declined to dismiss the matter, to provide an opportunity for Primo to get counsel and to hear from Libarle, and it was continued to October 18, 2016.

On September 29, 2016, Torbett served Libarle with a letter and a motion for sanctions under section 128.7. The letter advised Libarle of the ways in which the plaintiffs' claims lacked merit, and stated: "Your continued failure to dismiss this matter can result in an award against you personally for all costs expended in defending this meritless case from the date that the 'safe harbor' period ends until the matter is fully resolved. You have twenty one (21) days from service of this motion to dismiss the matter in its entirety, or you may be liable as indicated. Whileprior [*sic*] counsel may have escaped personal liability for future costs by being removed from this action, you are certifying the merit of the action by signing any documents/filings upon entering the matter." Torbett added, "The attached motion is served to put teeth to the repeated notices that the action has no merit."

The notice stated that the motion hearing would be held on May 17, 2017. The motion for sanctions argued that the causes of action alleged in the complaint had no merit due to the defendants' defenses. The plaintiffs had deceived

7

the defendants to take their case on a contingency basis, even though the plaintiffs knew they would not win. The plaintiffs failed to disclose that improper construction by their own contractors had caused the water damage, the business was closed as a result of competition from surrounding restaurants, and plaintiffs made a business decision to stop paying rent and vacate the premises against the advice of the Novian firm. The motion stated that plaintiffs' counsel, although aware of the lack of merit and the safe harbor to dismiss the matter, "refused to dismiss the complaint and all causes of action and thus have violated [section 128.7]." The motion argued that Libarle had a continuing obligation to ensure plaintiffs' claims were factually and legally sound when "later advocating" the claims. "By persisting with a meritless claim, [plaintiffs'] attorney should be sanctioned reasonable attorneys' fees and costs incurred as a result." Torbett requested sanctions against plaintiffs and Libarle in the total amount of $134,778.50, because plaintiffs failed and refused to dismiss the meritless action.

Among the documents attached to the motion for sanctions was the evidence from the second motion for summary judgment. Torbett's counsel spoke with Libarle by telephone to explain that the claims were meritless.

Libarle appeared at the next hearing, on October 18, 2016. No substitution of counsel form had been filed. Extensive discussion was held as to whether Libarle was authorized to appear for any of the plaintiffs. The

defendants vigorously argued that the action should be dismissed with respect to one or more plaintiffs, because Libarle had not properly substituted in to the case. Libarle was reluctant to file a substitution of counsel, because of the threatened motion for sanctions and his conflicts with scheduled hearing dates. The trial court questioned counsel about the sanctions, commenting that "[t]here can't possibly be a threat on Mr. Libarle that if you enter in this case, you magically are immediately subject to some significant sanctions," and that defendants' prior service of a notice of motion under section 128.7 "could not possibly be a sanction on new counsel personally." Torbett contended that just by filing paper with the court, "[t]he attorney of record certifies the merit of the case" and can be personally liable. Torbett conceded, however, that the notice previously given to Libarle, and the running of the safe harbor period beginning with that notice, would not be effective if it were determined that Libarle "is not attorney of record yet, so he hasn't certified the merit of the case." Torbett indicated he would "have to do it again if he files an actual substitution."

Libarle requested a week or 10 days to obtain the plaintiffs' signatures on a substitution of counsel form. He stated on the record that he was appearing for and represented Primo, but could not guarantee that he would be able to obtain his clients' signatures to file the substitution of counsel form that day. Counsel for all defendants took the position that Libarle was not yet counsel in the case because there was no written consent of the clients. The court

expressly found that the plaintiffs were still not represented by counsel. The trial court set an order to show cause regarding representation on November 2, 2016, to establish whether the parties were self-represented or represented by counsel, with an order to show cause regarding dismissal of Primo if the entity did not have representation. The trial court required that a written substitution of counsel form be filed prior to the hearing if any of the parties were going to be represented by counsel.

Libarle later satisfied the court's requirement. On November 30, 2016, he filed an opposition on behalf of the plaintiffs to the first motion for summary judgment based on causation and an opposition to the second motion for summary judgment based on the defense of unclean hands. The defendants filed replies. The motions for summary judgment were heard on January 4, 2017. The trial court granted the motion for summary judgment based on causation, which disposed of the case. The trial court entered judgment in favor of defendants on January 30, 2017.

On March 6, 2017, Torbett filed the motion for sanctions against Libarle that had been served on September 29, 2016. Torbett did not serve a new motion on Libarle after September 29, 2016. Libarle opposed the motion on procedural and substantive grounds, including that the motion for sanctions did not provide proper notice and the evidence submitted with the motion for sanctions had not been served with the motion. The Haney defendants

filed a notice of joinder in Torbett's motion for sanctions. Torbett filed a reply.

A hearing was held on the sanctions motion on May 17, 2017. Torbett clarified that he was seeking sanctions solely from Libarle, not Primo. Libarle argued that the motion was procedurally deficient, because he was served with the motion before he had substituted in to the case. Torbett responded that Libarle signed his name as plaintiffs' attorney in the declaration that he filed with the trial court on September 28, 2016, and filing any document or paper in a case was a certification of the merit of the case. Torbett further argued sanctions were appropriate based on conduct Libarle took after September 29, 2016, such as defending depositions and making objections, submitting declarations of plaintiffs to the court, and speaking at subsequent hearings. Libarle certified the merit of the case every time he filed a paper or appeared for the plaintiffs and spoke to the court. The trial court granted the motion, finding that "no reasonable attorney would have brought or maintained this lawsuit believing it to be meritorious," and awarded sanctions of $16,000 to Torbett and the joining Haney defendants. Libarle filed a timely notice of appeal.

# DISCUSSION

## Statutory Scheme and Standard of Review

Section 128.7, subdivision (a) requires every pleading or similar paper to be signed by an attorney of record, or if a party is not represented by counsel, by the party. (§ 128.7, subd. (a).)[2] Presentation of a pleading or similar paper to the court, "whether by signing, filing, submitting, or later advocating," constitutes a certification by the attorney or unrepresented party that the document is not being presented for an improper purpose; contains legal contentions warranted by law or a nonfrivolous argument for changing the law; alleges factual matter that is supported by evidence or likely to be so after a reasonable opportunity for further investigation; and contains denials of factual

---

[2] Section 128.7, subdivision (a) provides in full: "Every pleading, petition, written notice of motion, or other similar paper shall be signed by at least one attorney of record in the attorney's individual name, or, if the party is not represented by an attorney, shall be signed by the party. Each paper shall state the signer's address and telephone number, if any. Except when otherwise provided by law, pleadings need not be verified or accompanied by affidavit. An unsigned paper shall be stricken unless omission of the signature is corrected promptly after being called to the attention of the attorney or party."

contentions that are warranted by the evidence.  (§ 128.7, subd. (b).)[3]

After notice and a hearing, a court may impose sanctions on an attorney, law firm, or party that violates subdivision (b) of section 128.7, subject to the "safe harbor" conditions specified in subdivision (c).[4]  (§ 128.7, subd. (c);

_____

[3] Section 128.7, subdivision (b) provides in full:  "By presenting to the court, whether by signing, filing, submitting, or later advocating, a pleading, petition, written notice of motion, or other similar paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, all of the following conditions are met:  [¶]  (1)  It is not being presented primarily for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.  [¶]  (2)  The claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.  [¶] (3)  The allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.  [¶]  (4)  The denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief."

[4] Section 128.7, subdivision (c), states:  "If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an

13

*Optimal Markets, Inc. v. Salant* (2013) 221 Cal.App.4th 912, 920 (*Optimal*).) A motion for sanctions under section 128.7 must be made separately from other motions and "shall describe the specific conduct alleged to violate subdivision (b)."[5] (§ 128.7, subd. (c)(1).) A party seeking sanctions under section 128.7 follows a two-step procedure. (*Optimal*, *supra*, 221 Cal.App.4th at p. 920.) First, the moving party serves notice of the motion for sanctions on the offending party. (*Ibid.*) Service of the motion starts a safe harbor period

---

appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation. In determining what sanctions, if any, should be ordered, the court shall consider whether a party seeking sanctions has exercised due diligence."

[5] Section 128.7, subdivision (c)(1), provides in full: "A motion for sanctions under this section shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). Notice of motion shall be served as provided in Section 1010, but shall not be filed with or presented to the court unless, within 21 days after service of the motion, or any other period as the court may prescribe, the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected. If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees."

14

during which the motion cannot be filed with the court. (*Ibid*.)  If the challenged paper, claim, defense, contention, allegation or denial is not withdrawn or corrected within a prescribed number of days, the second step is to file or present the motion for sanctions to the court.  (*Ibid*.)

"""This permits a party to withdraw a questionable pleading without penalty, thus saving the court and the parties time and money litigating the pleading as well as the sanctions request." [Citations.]' [Citations.]" (*Optimal, supra*, 221 Cal.App.4th at p. 920.)  '"While section 128.7 does allow for reimbursement of expenses, including attorney fees, its primary purpose is to deter filing abuses, not to compensate those affected by them.  It requires the court to limit sanctions "to what is sufficient to deter repetition of [the sanctionable] conduct or comparable conduct by others similarly situated." (§ 128.7, subd. (d).)' [Citations.]" (*Id*. at pp. 920–921.)

Section 128.7 was modeled nearly verbatim upon rule 11 of the Federal Rules of Civil Procedure (28 U.S.C.). (*Board of Trustees v. Superior Court* (2007) 149 Cal.App.4th 1154, 1168.)[6]  Therefore, California courts may look to federal cases construing rule 11 for guidance in interpreting the language of section 128.7.  (*Optimal, supra*, 221 Cal.App.4th at pp. 920–921.)

"Ordinarily, a ruling on a motion for sanctions brought under section 128.7 is reviewed under a deferential abuse-of-

---

[6] All future references to rule 11 are to rule 11 of the Federal Rules of Civil Procedure (28 U.S.C.).

15

discretion standard.  (*Martorana v. Marlin & Saltzman* (2009) 175 Cal.App.4th 685, 698; *Guillemin v. Stein* (2002) 104 Cal.App.4th 156, 167; cf. *Cooter & Gell v. Hartmarx Corp.* (1990) 496 U.S. 384, 401–405 (*Cooter & Gell*) ['an appellate court should apply an abuse-of-discretion standard in reviewing all aspects of a district court's Rule 11 determination'].)  But where a question of statutory construction is presented in the course of the review of a discretionary decision, such issues are legal matters subject to de novo review.  [Citations.]  Thus, to the extent the trial court's denial of the motion for sanctions here involved an interpretation of the language of section 128.7, our review is de novo." (*Optimal*, *supra*, 221 Cal.App.4th at pp. 921–922, fn. omitted.)

**Presentation to the Court**

Libarle contends that the motion for sanctions in this case did not meet the requirements of section 128.7, subdivision (c)(1), because it did not provide notice of his sanctionable conduct with a safe harbor period for correction or withdrawal.  The motion for sanctions was based solely on the complaint, so sanctions could not be awarded unless Libarle had presented the complaint to the court prior to service of the motion.  We agree that Libarle's filing of a declaration simply notifying the court of a change in counsel did not constitute presentation of the complaint to the court.  There is no evidence that Libarle presented the complaint to

16

the court before Torbett served the motion for sanctions, and therefore, service of the motion was premature and sanctions had to be denied.

Section 128.7, subdivision (c)(1), requires a motion for sanctions to "describe the specific conduct alleged to violate subdivision (b)." An attorney violates subdivision (b) by presenting to the court, whether by "signing, filing, submitting, or later advocating," a pleading or similar paper that contains claims presented for an improper purpose, not warranted by law or a nonfrivolous argument for a change in the law, or containing factual allegations without evidentiary support.

The motion for sanctions served on Libarle was based entirely on the complaint, which we conclude Libarle had not presented to the court at the time that the notice of motion was served. The notice purported to give Libarle 21 days from service of the notice to dismiss the complaint and all causes of action. Libarle did not sign or file the offending complaint. When Torbett served the motion for sanctions on September 29, 2016, Libarle's only conduct in the case had been to file a single declaration, in which Libarle's only statements about the case were that he had been "retained to represent the plaintiffs" and he was "unavailable to appear [on a particular date and time]." The declaration does not submit Primo's claims to the court or advocate any of the claims. In fact, a few weeks after the declaration was filed, the trial court made a finding that Primo was still

17

technically self-represented.[7]  We conclude that at the time Libarle was served with the motion for sanctions, Libarle had not presented any of the objectionable claims in the complaint to the court, whether by signing, filing, submitting or further advocating the claims, so he could not be held liable for sanctions under section 128.7 based on the notice of motion that was served.  Indeed, as the trial court expressly found, Libarle was not even counsel of record at the time the notice was served, rendering the notice that he had 21 days from that point to dismiss the case premature.

Libarle may have presented Primo's claims to the court through his subsequent conduct in the proceedings, such as in opposition to the summary judgment motions, but the motion for sanctions that was served in September 2016 did not provide notice of specific conduct that violated the statute along with a safe harbor period to withdraw or correct the pleadings.  To seek sanctions for conduct taken after the date of the motion served on Libarle, the respondents were obligated to serve a new motion describing the sanctionable conduct to afford Libarle notice and the safe

---

[7] At the hearing on October 18, 2016, the first hearing Libarle was present in court, Torbett argued that the mere filing of any papers in a case means the signing attorney is certifying the case has merit, citing *Banks v. Hathaway, Perrett, Webster, Powers & Chrisman* (2002) 97 Cal.App.4th 949 (*Banks*).  *Banks* does not support the proposition for which it was cited, and Torbett does not cite or rely on *Banks* on appeal.  Nor does Torbett cite other persuasive authority for this proposition.

harbor period under the statute. (Cf. *Peake v. Underwood* (2014) 227 Cal.App.4th 428, 447–448 [a new safe harbor period is generally required after an amended pleading is filed, but the trial court in *Peake* did not abuse its discretion by imposing sanctions based on an amended pleading without a new notice period when the sanctioned party filed both the original and the amended pleading containing the same frivolous claims, had notice of the defects, and had the benefit of the safe harbor period for the original pleading]; *Lawrence v. Richman Group of Connecticut LLC* (2d Cir. 2010) 620 F.3d 153, 158–159 [vacating award of sanctions under rule 11 because renewed motion for sanctions was served after dismissal of second amended complaint, so sanctioned party never received notice of defect and an opportunity to correct second amended complaint].)

California case law supports our conclusion. In *Optimal, supra*, 221 Cal.App.4th at p. 917, the plaintiff filed a case that was referred to binding arbitration. After the trial court stayed the action pending the conclusion of the arbitration proceedings, the plaintiff substituted in new counsel. (*Id.* at pp. 922–923.) Some of the defendants who prevailed in the arbitration requested sanctions under section 128.7 against the new attorneys for advocating frivolous claims, which the trial court denied. (*Id.* at pp. 918, 922.) The appellate court affirmed the order denying sanctions. (*Id.* at p. 922.) Although the new attorneys became counsel of record after the complaint was filed, the *Optimal* court found the attorneys did not present

the objectionable pleading to the court by signing, filing, submitting or later advocating it.  (*Id*. at pp. 922–923.)  The attorneys advocated the complaint to the arbitrator, but advocacy in arbitration did not constitute presentation of the claims "to the court" as required under section 128.7.  (*Id*. at p. 923.)

The advisory committee note to rule 11 as amended in 1993 (Advisory Com. Notes, 1993 amend. to Fed. Rules Civ.Proc., rule 11, reprinted at 28 U.S.C.A. (2008 ed.) foll. rule 11, pp. 10–11) explains the obligation of an attorney or unrepresented party under rule 11 as follows:  "The rule continues to require litigants to 'stop-and-think' before initially making legal or factual contentions.  It also, however, emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable and by generally providing protection against sanctions if they withdraw or correct contentions after a potential violation is called to their attention.  [¶]  The rule applies only to assertions contained in papers filed with or submitted to the court.  It does not cover matters arising for the first time during oral presentations to the court, when counsel may make statements that would not have been made if there had been more time for study and reflection.  However, a litigant's obligations with respect to the contents of these papers are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and

motions after learning that they cease to have any merit. For example, an attorney who during a pretrial conference insists on a claim or defense should be viewed as 'presenting to the court' that contention and would be subject to the obligations of subdivision (b) measured as of that time." The advisory committee note to rule 11 additionally states that "if evidentiary support [for an allegation made on information and belief] is not obtained after a reasonable opportunity for further investigation or discovery, the party has a duty under the rule not to persist with that contention. Subdivision (b) does not require a formal amendment to pleadings for which evidentiary support is not obtained, but rather calls upon a litigant not thereafter to advocate such claims or defenses." (*Id.* at p. 11.)

Federal case law is in accord with our conclusion. In *Bakker v. Grutman* (4th Cir. 1991) 942 F.2d 236, 240, the federal court found that a substitution of new counsel, by itself, was not enough to conclude that the substitute counsel intended to continue prosecution of the lawsuit. When an attorney is substituted as counsel of record, the new attorney is not deemed to have constructively signed the complaint; instead, rule 11 requires a new pleading form the basis for imposing sanctions against the successor attorney. (*Ibid.*) "Rule 11 imposes upon substitute counsel a duty to investigate the legal and factual sufficiency of the claims he or she takes up; [citations]; but until substitute counsel files some paper indicating an intention to continue prosecution

21

of the suit, such a decision will not be presumed by looking to the complaint itself." (*Ibid.*, fn. omitted.)

The federal court's decision in *Turner v. Sungard Business Systems, Inc.* (11th Cir. 1996) 91 F.3d 1418, is distinguishable. In *Turner*, a new attorney filed a notice of appearance for the plaintiff. (*Id.* at p. 1420.) The new attorney falsely told the district court during a pretrial conference that he had evidence to support a key factual contention of the complaint, but later did not oppose a motion for summary judgment. (*Ibid.*) The district court granted summary judgment. (*Ibid.*) The defendant moved for sanctions against the new attorney under rule 11, which the trial court imposed. (*Id.* at pp. 1420–1421.) Although the only paper filed by the attorney with the court was a notice of appearance, the *Turner* court found no abuse of discretion in ordering sanctions, because the attorney's appearance and continued advocacy of the plaintiff's claims at the pretrial conference, which occurred before service of the notice of motion, "presented" contentions to the court which the attorney knew were meritless. (*Id.* at p. 1421.)

*Turner* is distinguishable from the instant case, because the attorney sanctioned in *Turner* not only filed a notice of appearance but presented meritless claims to the court during the pretrial conference. The advisory committee note to rule 11 as amended in 1993 explicitly states that arguments made to the court during pretrial conferences should be viewed as "presenting" the contentions to the court. (Advisory Com. Notes, 1993 amend. to Fed.

22

Rules Civ.Proc., rule 11, reprinted at 28 U.S.C.A. (2008 ed.) foll. rule 11, p. 11.)  Further, *Turner* did not present the same issues of inadequate notice as present here:  in *Turner*, the sanctions were imposed pursuant to an order to show cause set by the court, not a defective notice served by opposing counsel.  (*Turner v. Sungard Business Systems, Inc., supra*, 91 F.3d at p. 1421, fn. 3.)  To the extent that a portion of the discussion in *Turner*, read in isolation, implies that simply filing a notice of appearance in a meritless case is sufficient to violate rule 11, we disagree and find it inconsistent with the plain meaning of section 128.7, subdivision (b).

## DISPOSITION

The order is reversed.  Appellant Marc Libarle is awarded his costs on appeal.

MOOR, J.

We concur:

RUBIN, P. J.

BAKER, J.